(Decided 19th June, 1894.)

THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* STATE OF MARYLAND, use of PHILLIPINA STRUNZ, Widow, and LOUIS STRUNZ, Infant.

*Negligence—Railroad—Driver of Private wagon— Reversal of Judgment.*

One who accepts an invitation from an able and competent driver, with a quiet horse, to take a gratuitous ride in a private carriage, having no control of the driver or of the horse and carriage, is not chargeable with such driver's negligence, and contributory negligence on his part is no defense to an action in damages against a railroad company for the death of the person accepting the ride caused by a collision with a train.

The admission erroneously of evidence which could not properly have influenced the jury to a result different from that at which they arrived from the consideration of the other evidence in the cause, does not furnish sufficient ground for a reversal of the judgment.

Balt. & Ohio R. R. Co. *vs.* State, use of Strunz.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First and Second Exceptions,* stated in the opinion of the Court.

*Third Exception*—The evidence having been closed on both sides, the plaintiff offered the four following prayers:

1. That if the jury shall find from the evidence in the cause, that on or about the 10th day of January, 1893, August Strunz, the husband of the equitable plaintiff, Phillipina Strunz, and father of the equitable plaintiff, Louis Strunz, was injured and killed by the locomotive or cars of the defendant, while operated by its agents on its road, and that said injury and death resulted directly from the want of ordinary care and prudence on the part of the defendant or its agents, and not from the want of ordinary care and prudence on the part of the said August Strunz directly contributing to the injury, then the plaintiff is entitled to recover, and their verdict must be for the plaintiff.

2. That if the jury shall find from the evidence in the cause the facts hypothetically stated in the plaintiff's first prayer, and shall further find from the evidence in the cause, that at the time the vehicle in which August Strunz was riding was approaching the track of the defendant, and at the time and place of the collision between the locomotive and train of the defendant and the Dayton wagon in which August Strunz was riding, and by which collision said August Strunz was killed, the said August was only a passenger or invited guest in said Dayton wagon, and that he exercised no control over the driving or management of the same, and shall further find from the evidence in the cause that said Dayton wagon and the horse drawing the same were owned by Adam Schneider, and that said Adam Schneider was driving and controlling his said horse and Dayton wagon, that even though they shall find

from the evidence in the cause that said Adam Schneider was guilty of negligence in the manner in which he managed and drove said horse and wagon, which contributed to the happening of the accident; that as a matter of law the negligence of said Adam Schneider cannot be imputed to August Strunz, and forms no bar to the right of recovery of the plaintiff in this case against the defendant; provided that the jury shall further find from the evidence in the cause, that August Strunz himself committed no act of negligence which contributed to the happening of the accident which caused his death.

3. That if the jury shall find from the evidence in the cause, that Ridgely street, at the intersection of the tracks of the Baltimore and Ohio Railroad Company, is a street in the city of Baltimore, and that the tracks of said railroad cross the said street at grade, then, under the Code of Public Local Laws of Maryland, Article 4, section 763, it was the legal duty of the Baltimore and Ohio Railroad Company to place, erect and keep in operation and repair safety gates in such street in said city; which said safety gates should be closed on the approach of any and every train of cars or locomotive, and kept closed until said cars or locomotive had completely passed said street crossing, and that such was the legal duty of the Baltimore and Ohio Railroad Company prior to and on the 10th day of January, 1893.

4. That if the jury should find a verdict for the plaintiff, they may, in estimating the damages to be allowed, consider what was the pecuniary loss which the said Phillipina Strunz, widow, has sustained by reason of the negligent killing of her said husband, and may consider the reasonable probabilities of the continuance of the joint lives of said August Strunz and Phillipina Strunz but for said negligent killing of her husband, and may allow her such damages as in their judgment would compensate her for such pecuniary loss as she has sustained, and reasonably

will sustain, by reason of said killing of her husband, and in estimating the damages which the said minor child, Louis Strunz, has sustained, and will sustain, they may consider what pecuniary loss he has sustained by reason of the negligent killing of his father, August Strunz, the prospective damages to be estimated up to the majority of the said Louis Strunz, and that the jury shall by their verdict find and direct what shall be the share of the said widow, and what shall be the share of the said minor child, of the amount of their verdict.

The defendant offered the following ten prayers:

1. That the plaintiff is not entitled to recover, because, by the undisputed evidence in the case, the negligence of the deceased, August Strunz, directly contributed to the collision that caused his death.

2. That even if the jury should find that the death of deceased was caused by the negligence of the defendant company, yet the plaintiff cannot recover if any negligence of the deceased directly assisted in causing the accident; and if the jury find that any such negligence on the part of the deceased directly assisted in causing the accident, their verdict must be for the defendant.

3. That if the jury find that the witness, Adam Schneider, could, by stopping and looking at a proper distance from the track, have avoided the accident, and that he did not stop and look at such proper distance, then their verdict must be for the defendant.

4. That it was the duty of the deceased, in approaching the tracks, to stop, look and listen for coming trains, and he would not be relieved from this duty by the absence of any of the usual warnings at the crossing; and if the jury find that he did not so stop, look and listen, and that the accident would not have occurred if he had done so, their verdict must be for the defendant.

5. That plaintiff is not entitled to a verdict, unless it is proven by a preponderance of testimony that the death of

deceased was directly caused by the negligence of defendant company.

6. That if the jury find that the witness, Adam Schneider, was not engaged in the carriage of passengers, and that the deceased was riding with him merely as a friend on this special occasion, then the deceased would be responsible for the results of any negligence of the said Adam Schneider directly contributing to the accident; and if the jury find that due and ordinary care on the part of said Adam Schneider would have prevented the accident, the plaintiff cannot recover, and their verdict must be for the defendant.

7. That August Strunz was riding in the carriage of Adam Schneider not as a hired carriage, but as an invited companion, and had an equal opportunity of seeing the railroad tracks, and that the plaintiff cannot recover in this case if the injuries to August Strunz were caused by the failure of Adam Schneider to take the necessary precautions of stopping, looking and listening from a point where a view of the railroad tracks could be obtained before he drove upon the railroad tracks.

8. That the undisputed evidence in this case shows that August Strunz permitted himself to be driven down to the Ridgely street railroad crossing by his friend, Adam Schneider, with whom he was riding, not for hire, but as a free invited companion; that when they approached the railroad crossing the said August Strunz permitted the said Schneider to stop the carriage at a point where it was impossible to see down the railroad tracks to the east; that the said August Strunz verbally acquiesced in the conclusion of the said Schneider that it was safe to cross, from the observation made at that point, and allowed himself to be driven on to the railroad tracks over an intervening space, from which, if he or said Schneider had looked, it would have been possible to have seen down the railroad tracks to the eastward. That the failure of August Strunz to look and

listen, or see that Schneider looked and listened while passing over the space before the railroad tracks were reached, from which a view down the tracks to the east could be obtained, was contributory negligence on the part of the said August Strunz directly contributing to the accident, and the verdict of the jury must be for the defendant.

9. That if the jury find that August Strunz permitted himself to be driven down to the Ridgely street railroad crossing by his friend, Adam, Schneider, with whom he was riding, not for hire, but as a free invited companion; that when they approached the railroad crossing said August Strunz permitted the said Schneider to stop the carriage at a point where it was impossible to see down the railroad tracks to the east; that the said August Strunz verbally acquiesced in the conclusion of the said Schneider—that it was safe to cross, from the observation made at that point, and allowed himself to be driven on to the railroad tracks, over an intervening space from which if he or said Schneider had looked it would have been possible to have seen down the railroad tracks to the eastward a sufficient distance to avoid the accident; that the failure of August Strunz to look and listen, or see that Schneider looked and listened while passing over the space before the railroad tracks were reached, from which a view down the tracks to the east could be obtained, was contributory negligence on the part of the said August Strunz, directly contributing to the accident, and the verdict of the jury must be for the defendant.

10. That if the jury should find for the plaintiff, they cannot give any damages for distress of mind caused to the equitable plaintiff by the killing of the deceased, but must limit the damages to such an amount as will be a compensation for the pecuniary loss occasioned by the death of said deceased.

The Court (WRIGHT, J.,) granted the plaintiff's first, second and fourth prayers, and refused its third prayer, and granted the defendant's second, fifth and tenth prayers,

and refused its first, third, fourth, sixth, seventh, eighth and ninth prayers.

The defendant excepted to the granting of the plaintiff's first, second and fourth prayers, and to the refusal of the Court to grant its first, third, fourth, sixth, seventh, eighth and ninth prayers; and also excepted specially to the granting of the plaintiff's first and second prayers, as to the negligence of the defendant, for the reason that there had been no evidence offered legally sufficient to show that the death of August Strunz was caused in any way by the negligence of the defendant, its agents or employés. The Court overruled this exception. The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued for the appellant before ROBINSON, C. J., BRYAN, ROBERTS, McSHERRY and BRISCOE, J. The Court declined to hear counsel for the appellee.

*Geo. Dobbin Penniman,* (with whom were *W. Irvine Cross,* and *John K. Cowen,* on the brief,) for the appellant.

*William F. Porter,* and *Henry V. D. Johns,* for the appellee.

ROBERTS, J., delivered the opinion of the Court.

This action was brought in the Baltimore City Court, in the name of the State, as plaintiff, for the use of the widow and son of August Strunz, who was killed by what is alleged to have been the wrongful act, neglect, or default of the defendant corporation.

There was a verdict for the plaintiff, and judgment thereon, from which the defendant has appealed.

The accident happened at what is known as the Ridgely street crossing of the Baltimore and Ohio Railroad, at the

corner of Ridgely and Ostend streets, in the city of Baltimore. Ostend street runs east and west, and the defendant occupied the bed of the street, at this point, with two tracks, which constitute part of the main line between Baltimore and Washington. Ridgely street runs north and south, and the railroad crossing is at grade. The defendant, in compliance with Article 4, section 763, of the Code of Public Local Laws, maintains à safety gate on either side of its track at this point, and the gateman's box is on the south side of the track on Ridgely street.

The train, which caused the accident, left Camden Station, on the 10th of January, 1893, at 3.01, in the afternoon, to run to Washington. It was behind schedule time and was running at a rate of speed greater than the limit fixed by the city ordinance. The crossing is dangerous, rendered especially so from the fact that on the northeast corner of Ostend and Ridgely streets, there is a high bank, which cuts off the view from Ridgely street of the track towards the east; and, at the time of the accident, a high wind was prevailing, making it almost impossible to hear the sound of an approaching train. It is not until a driver approaches to within forty feet of the track that a view, in an easterly direction, down the track can be obtained, and then only for a distance of about two hundred and twenty-six feet. Both safety gates were up, and, in consequence of the severe winter weather, only one could be operated, and that with difficulty. Neither Schneider, the driver and owner of the horse and wagon, nor Strunz had knowledge of the defendant's inability to use the gates. As to the position and conduct of the flagman, at the time of the accident, the testimony is conflicting.

Under these circumstances, August Strunz, as the invited guest of Adam Schneider, an able and competent driver of a quiet horse, accompanied him into the city of Baltimore from the town of Westport, which is also within the corporate limits of the city. Westport is located at the ex-

treme end of Ridgely street and a short distance from the railroad crossing. On their return trip to Westport, Schneider, driving his own horse and wagon, was seated on the right hand and Strunz on the left-hand side of the front seat. The testimony is also conflicting as to the speed at which Schneider was driving as he approached the crossing, and as to whether he stopped, looked and listened before he attempted to cross.

There are, in point of fact, all through the case two versions of the circumstances attending the accident, and two conflicting stories are told, the one diametrically opposed to the other.

There is substantially but one question in controversy on this appeal, and the argument, on the part of the appellant, clearly outlines the request that we review and modify the decision pronounced by this Court in the case of the *Phila. Wilm.& Balto.Railroad Company vs.Hogeland*,66 *Md.*, 149. The two cases are in many respects identically the same as to the facts, and, such being the case, the law applicable to the one case ought to control in the other, unless we have violated some settled principle of the law in the decision of the Hogeland case. It is contended in this case that it varies somewhat from Hogeland's in this, that, after Schneider stopped his wagon to look and listen for an approaching train, he remarked to Strunz: "It seems all right," and Strunz ejaculated, "hun hah," which Schneider thought expressed his assent that it was all right, and that it would be safe to cross.

It is the generally accepted doctrine of the Courts of this country that the contributory negligence of a carrier, or the driver of a public or private vehicle, not owned or *controlled* by the passenger, and who is himself without fault, will not constitute a bar to the right of a passenger to recover for injuries received. The *only* principle upon which such contributory negligence could bar the right of recovery is, that the driver should be regarded

as the agent or servant of the passenger. But when, as in this case, he has no control over the driver, and does not own the vehicle, and is without blame, and there is no ground in truth and reality for holding him to be the principal or master, *there is neither reason nor justice* in holding him bound by the contributory negligence of the driver. *Hogeland's case,* 164-5, *supra.* But suppose Strunz, instead of assenting, had plainly indicated his dissent, he was not the owner nor in control of the horse and wagon, and in no position to restrain the action of Schneider. Would there, under these circumstances, be reason or justice in holding Strunz responsible for the conduct of Schneider? We think not; and, thus holding, we find no substantial difference between this case and the case of Hogeland.

The appellant has directed our attention to the case of *Dean vs. Penn. R. R. Co.,* 129 *Penn. St.,* 514, and that of *Brickell vs. New York Central and Hudson River R. R. Co.,* 120 *N. Y.,* 290, as contravening the rule announced by this Court. A careful examination of Dean's case will disclose the fact that the principles of law which it maintains in no manner conflict with the doctrine announced by this Court. It condemns the decision of *Thorogood vs. Bryan,* 8 *Com. B.,* 115 (65 *Eng. Com. Law*), as being at variance with reason and common sense, and places to its credit many erroneous decisions which have followed in its wake.

The case of *Brickell vs. New York Central and Hudson River R. R. Co., supra,* is the other case supposed to be at variance with the decision in *Hogeland's case,* but it rests upon a state of facts differing widely from the circumstances of the case at bar or that of Hogeland. We have examined the case with care and do not think it justifies the use sought to be made of it, as the authority upon which it rests does not sustain it. Like this Court in *Hogeland's case,* so the Court in *Brickell's case* quotes *Robinson vs. New York Central and Hudson River R. R. Co.,*

66 *N. Y.*, 11, as authority. That there may be no misapprehension as to what was decided in *Robinson's case*, we quote the language of CHURCH, Chief Judge, who delivered the opinion. He says: "The Court held that if the defendant was negligent, and the plaintiff was free from negligence herself, she was entitled to recover, although the driver might be guilty of negligence which contributed to the injury."

"In determining this question it is important first to ascertain the relation which existed between the plaintiff and Coulon, the driver. It is very clear, and was found by the jury that the relation of master and servant did not exist. Nor was Coulon, in any sense, the agent of the plaintiff. He had invited the plaintiff to ride to a certain place, which she declined, but stated that if he would come on a specified day she would ride with him to another place where she desired to go for a visit, and it was during that ride that the accident occurred. I do not think that the change affected the relation between the parties. It was the same as if the plaintiff had accepted the first invitation. It is, therefore, the case of a gratuitous ride by a female upon the invitation of the owner of a horse and carriage. The plaintiff had no control of the vehicle, nor of the driver in its management. It is not claimed but that Coulon was an able-bodied, competent person to manage the establishment, nor that he was intoxicated, or in any way unfit to have charge of it. Upon what principle is it that his negligence is imputable to the plaintiff? It is conceded that if by his negligence he had injured a third person she would not be liable. She was not responsible for his acts, and had no right and no power to control them. True, she had consented to ride with him, but as he was in every respect competent and suitable, she was not negligent in doing so. Can she be held, by consenting to ride with him, to guaranty his perfect care and diligence? There was no necessity for riding with him. It was a vol-

untary act on the part of the plaintiff, but it was not an unlawful or negligent act. She was injured by the negligence of a third person, and was free from negligence herself, and I am unable to perceive any reason for imputing Coulon's negligence to her."

As already stated, the case of *Thorogood vs. Bryan, supra,* had been for many years the groundwork of the English cases of imputed negligence, and had in some of the American decisions, been accepted as correct in principle; but in the recent case of *The Bernina, L. R.,* 12 *Prob. Div.,* 58, 82 (1887), it has been by the English Court of Appeals, expressly overruled. Lord ESHER, M. R., after an extended review of the English and American cases, said: "After having thus laboriously inquired into the matter, and having considered the case of *Thorogood vs. Bryan,* 8 *Com. B.,* 115, we cannot see any principle on which it can be supported; and we think that, with the exception of the weighty observation of Lord BRAMWELL, though that does not seem to be a final view, the preponderance of judicial and professional opinion in England is against it, and that the weight of judicial opinion in America is also against it. We are of opinion that the proposition maintained in it is erroneously unjust and inconsistent with other recognized propositions of law. As to the propriety of dealing with it, at this time, in a Court of Appeals, it is a case which, from the time of its publication, has been constantly criticised, and no one can have gone into or have abstained from going into an omnibus, railroad, or ship, on the faith of the decision. We therefore think that, now that the question is for the first time before an English Court of Appeal, the case of *Thorogood vs. Bryan,* 8 *Com. B.,* 115, must be overruled."

But whatever conflict may be found to exist in the decisions relating to this subject, the decided weight of authority is in favor of the view heretofore expressed by this Court; and upon further reflection and consideration, we

Balt. & Ohio R. R. Co. *vs.* State, use of Strunz.

are of the opinion that the doctrine announced in the Hogeland case is just and reasonable, and based upon sound principles of law, which in a case such as we are now considering ought not to be modified or disturbed.

There are two exceptions taken to the admissibility of certain evidence. The first relates to the use of defendant's time-table for the purpose of showing the distances between certain stations on defendant's road, and also as showing the time in which defendant's engineers and conductors were directed to run its trains between the same stations—such stations being those located between Camden Station and the Ridgely street crossing—when the accident happened. We fail to see how the defendant has been injured by the use made of the time-table, especially when considered in connection with the other testimony in the cause. Whether the Court erred or not in the admission of the time-table offered in evidence, as an abstract legal proposition, will not necessarily justify a reversal of the judgment. If the evidence offered and admitted could not properly have influenced the jury to a result different from that at which they arrived from the consideration of the other evidence in the cause, then in such case, if it were improperly admitted, the error would have been a mere abstract error, which would not work a reversal of the judgment. It has been almost universally held that neither the admission nor the exclusion of testimony, when it does not appear to have affected the result or prejudiced the appellant, will be regarded as sufficient ground for reversal.

The second exception is taken to the admissibility of one of the rules of the defendant company, regulating the speed of passenger trains, but we see nothing in it calculated improperly to interfere with or prejudice the defendant.

The instructions asked by the plaintiff were properly granted. Nor do we find any error in the action of the Court below in rejecting the defendant's first, third, fourth, sixth, seventh, eighth and ninth prayers. The defendant's

eighth and ninth prayers contain the propositions of law which we have discussed at some length herein, and they have been disposed of by what has already been said. It seems to us that, by the defendant's second, fifth and tenth prayers granted by the Court, the jury were instructed in terms quite as favorable as the defendant was entitled to receive. The judgment must, therefore, be affirmed.

*Judgment affirmed, with costs.*

(Decided 19th June, 1894.)