### 10287

LANGLEY v. SOUTHERN RY. CO. *ET AL.*

(101 S. E. 286.)

1. Negligence—Instruction on Imputed Negligence Relevant.—In action against railroad for injuries to occupant of automobile at crossing, evidence which was susceptible of inference that plaintiff and other occupants agreed to and acquiesced in purpose suggested by plaintiff of arriving at depot before certain train, making it necessary to operate automobile at great speed,. and that plaintiff was responsible for speed at which it was being run, instruction as to negligence of driver being imputed to occupant, when engaged in a common purpose, was relevant.

2. Trial—Necessity of Request for Instructions.—If plaintiff had desired instructions as to any other view of the case than that suggested by defendants' pleading and the evidence adduced in support thereof, and the defendants' request to charge, she should have requested them, and, having failed to do so, Court's failure to give such instructions was not reversible error. (Per Hydrick and Fraser, JJ.)

3. Negligence—Automobile Driver's Negligence Imputed to Occupant.—Where automobile driver in driving automobile to a depot heeded the directions of occupants who wanted to board a train, the management of automobile was the concurrent act of driver and the occupants and the negligence of driver in driving at excessive speed was imputed to an occupant precluding recovery from railroad for injuries at crossing.  (Per Gage, J.)

Before Moore, J., York, Summer term.   Affirmed.

Action by Fannie B. Langley against the Southern Railway Company and another.   Judgment for defendants, and plaintiff appeals.

Following is the complaint and answer and exceptions referred to in the opinion:

Complaint. The following is the complaint, omitting formal parts:

The plaintiff alleged that on April 8, 1917, while in an automobile, the property of her husband, accompanied by her husband, Will Wingate, and two young ladies, coming from Charlotte, N. C., en route to Lancaster, S. C., just above Pineville, N. C., the car was struck by the defendant's train at a public crossing, and the car demolished, and the plaintiff was seriously and permanently damaged. It is charged in the complaint that the train was obstructed for some distance approaching the crossing by a cut, curve, and trees, and that towards the public crossing it was down grade. It was charged as negligence that no signals were given, and no warning at all of the approach of the train, and that this was negligent and wilful. It was also alleged that the rate of the speed of the train, under the circumstances, was dangerous, and that this crossing was dangerous, and much used by the public.

The plaintiff demanded $20,000 damages.

Answer. The following is the answer of the defendants:

The defendants above named, answering the complaint herein, allege:

For a first defense: That they deny the truth of each and every allegation contained in the plaintiff's complaint.

For a second defense. (1) That, as the defendants are informed and believe, on or about the date mentioned in the complaint, the plaintiff, together with W. S. Langley, Annie Caskey, Carrie Caskey, and Will Wingate, were riding in an automobile between the station of Hebron and the station of Pineville, both in the State of North Carolina, and that the automobile in which the plaintiff and said parties were riding was struck on a public crossing between the two stations mentioned, whereby the plaintiff and said parties received

some minor injuries, which are neither of a serious nor permanent nature, as the defendants are informed and believe.

(2) That the statute law of North Carolina provides that no person shall operate a motor vehicle upon the public highways of that State recklessly or at a rate of speed greater than is reasonable and proper, having regard for the width, traffic, and use of the highway, life or limb of any person; provided, that in residence portions of cities, the speed shall not be in excess of 15 miles per hour; in business sections of the towns or cities not exceeding 10 miles per hour, and outside of the corporate limits of any incorporated city or town the rate of speed shall not exceed 25 miles per hour on any public highway in said State, and any rate of speed in excess thereof shall be deemed in violation of said statute, and the said statute expressly makes its provisions applicable to nonresident owners or operators of motor vehicles while traveling over the roads in said State of North Carolina.

(3) That there is no statute in the State of North Carolina, requiring railroads operated in the said State of North Carolina to ring a bell or blow a whistle upon approaching a public highway or other crossing, and the matter of signals, lookout, and speed of trains is governed entirely by the common law of North Carolina, as applied by the Courts of that State.

(4) That, at the time of the collision above mentioned, the car in which the plaintiff was riding was being run by W. S. Langley and Will Wingate, with the knowledge and approval of the plaintiff, and all the parties in said car were engaged in the common purpose of running said car for pleasure or otherwise; and while defendant's train was at the station of Hebron, the plaintiff and other parties in said automobile passed in a very short distance, and in plain view of defendant's train, and saw, or by the exercise of ordinary care could have seen, that said train was going in the same

direction that they were traveling in their automobile, and the crossing where the collision occurred is not exceeding one-half a mile south of the station of Hebron, in the State of North Carolina.

(5) That between the said station of Hebron and the said railroad crossing and up to the time of the actual collision, the said car was being run at a reckless rate of speed, and in flagrant violation of the statute of the State of North Carolina, aforesaid, and approached the said crossing at a dangerous and reckless rate of speed, with the purpose of getting over said crossing ahead of defendant's train, the plaintiff being fully aware of said purpose, and concurring therein, and she well knew at the time that said train was approaching, as it could have been easily seen if any precautions whatsoever had been taken, and there were no obstructions that could have prevented the plaintiff from seeing said train, or hearing the same, if she had looked or listened, or exercised even ordinary care to observe its approach; and any injuries that the plaintiff sustained were due entirely to her own gross carelessness and negligence in failing to take any precautions to observe the train approaching, in allowing said automobile to be run at a dangerous and reckless rate of speed, as aforesaid, and in utterly failing to exercise any care, or to take any precautions whatsoever for her own safety by having the said car checked up, she well knowing that the said train was approaching said crossing, or, by the exercise of care could have known thereof, all of which carelessness and negligence on the part of the plaintiff was the proximate cause of her injuries, or contributed as a proximate cause thereto.

(6) That prior to approaching said crossing, the defendant's agent and servant, J. M. Crow, who was in charge of the engine pulling said train, gave timely notice of its approach by blowing its whistle and ringing the bell of said engine.

Wherefore, the defendants pray that the complaint may be dismissed, with costs.

Exceptions. The following are the exceptions:

(1) The Court erred in charging the jury as follows:

Now, as to the matter of giving signals or warning of the approach of a train to a public crossing: Under the laws of North Carolina, I charge you that there is no statute of the State of North Carolina, requiring the ringing of the bell or the blowing of the whistle. As to whether or not the failure to ring the bell or blow the whistle. upon approaching such crossing is negligence, is a question of fact for your determination in this case from the evidence.

The error being that the failure to ring the bell or sound the whistle upon approaching a public crossing, under the common law of North Carolina, is negligence.

(2) That it was error for the Court to have charged the jury as follows:

There is no statute or other law in North Carolina requiring the ringing of the bell or the blowing of a whistle at a public crossing.

The error being that the charge was on the facts.

(3) That it was error for the Court to have charged the jury as follows:

There is no statute or other law in North Carolina requiring the ringing of the bell or the blowing of a whistle at a public crossing.

The error being that, under the laws of North Carolina, a railroad is required to give a reasonable notice or warning of its approach and intention to use a public crossing, and the failure to give such warning is negligence.

(4) That it was error for the Court to have charged the jury:

The mere fact that the railroad company failed to give signals there does not constitute negligence in itself of the railway company; also, the question whether any such fail-

4—S. C. 113

ure, if it has been shown, constitutes negligence, are facts for your determination under the evidence.

The error being that the failure to give signals upon approaching a crossing is negligence.

(5) That it was error for the Court to have charged the jury:

Now, by the statute of North Carolina, which has been introduced in evidence, it is provided that upon approaching an intersecting highway, sharp curve, or steep descent, and also in traversing such intersecting highway, a person operating a motor vehicle, that is to say, the driver, shall have such motor vehicle under control and operated at such speed, not exceeding seven miles an hour, as shall be reasonable, having regard to the traffic then on such highway and the safety of the public. Under the law of the State of North Carolina, which is the law governing this case, a railroad is a public highway. * * *

The error being that the charge was on the facts.

(6) That it was error for the Court to have charged the jury as follows:

Where several persons are engaged in a common enterprise, where they are traveling in an automobile for pleasure, or otherwise, each would be the agent of the other in carrying out such proposition. Where one of them, by common consent of all, is engaged in driving such automobile, the person so driving would be the agent of the others engaged in such common enterprise or purpose, and each of the travelers so participating would be liable for the negligence of the driver of the automobile, if there was any such negligence.

The error being that the charge was not applicable to any view of the case, and confusing and misleading.

(7) That the negligence of the driver of an automobile is not imputed to an occupant thereof, and it was error for

the Court to have charged that the negligence of the driver of the said automobile could be imputed to the plaintiff, and bar a recovery.

(8) That the statute purporting to regulate the speed of a motor vehicle in approaching a public crossing or an intersecting highway is not applicable to a highway intersected by a railroad, and it was error for the Court to so have construed said alleged statute.

The error being that the act of North Carolina conflicted with the laws of South Carolina, as construed in *Dobbins v. Ry.*, 108 S. C. 254 (93 S. E. 932).

(9) That the statute purporting to regulate the speed of an automobile not to exceed seven miles an hour is inapplicable under the pleadings, and the Court erred in not withdrawing the same from the consideration of the jury on motion of the plaintiff's attorney.

(10) That it was error for the Court to have refused to charge the jury, as requested by the plaintiff's attorney, that the purported statute regulating the speed of a motor vehicle upon approaching an intersecting highway was inapplicable under the pleadings.

(11) That the Court erred in charging as follows:.

It is the duty of the engineer and fireman in charge of a railroad train to use due care, upon approaching such crossing, to keep a reasonable lookout for travelers upon such crossing, so far as is practicable and consistent with the discharge of the other duties of such fireman and engineer in firing and operating such engine.

The error being that it is the unqualified duty of the engineer and fireman to keep a vigilant lookout ahead for the sake of passengers, as well as those who may be helpless upon the track, and such duty is urgent, and it was error for the Court to have so qualified the rule.

*Mr. J. Harry Foster,* for appellant, cites: *As to exceptions 1, 3 and 4:* 132 N. C.; 43 S. E. Rep. 585; 109 N. C.

473; 13 S. E. Rep. 884; 26 Am. St. Rep. 581; 109 N. C. 474; 26 Am. St. Rep. 581; 153 N. C. 59; 69 S. E. Rep. 251; 71 S. E. Rep. 213; 106 N. C. 431; 79 S. E. 690; 25 S. C. 61; 87 S. C. 328; 52 S. C. 328; 58 S. C. 74; 25 S. C. 61. *As to exceptions 2 and 5:* Code 1912, vol. I, sec. 3991. *As to exceptions 6 and 7:* 29 Cyc. 543; 549 Thompson on Neg., vol. VII, 499-502; 117 Iowa 271; 88 N. W. Rep. 379; Thompson on Neg., vol. VII, secs. 504-506; 101 Am. St. Rep. 842; 172 N. C. 853; 84 N. Y. 247; 38 Am. Rep. 510; 89 Ga. 601; 16 S. E. 118; 57 Kans. 57; Am. St. Rep. 309; 64 N. H. 631; 10 Am. St. Rep. 410; 5 N. Dak.. 281; 35 N. W. 676; (Ohio) 1st N. E. Rep. 519; 57 Am. Rep. 483; (Penn.) 66 Md. 149; 59 Am. Rep. 159; 79 Md. 335; 47 Am. St. Rep. 415; 35 Min. 522; 59 Am. Rep. 340; 29 N. W. 317; 2d Jaggard on Torts, sec. 276, p. 982; Bishop on Contract Law, sec. 1070; 108 S. C. 254. *Exception 8:* 108 S. C. 254; 90 S. E. 756; 51 Am. St. Rep. 654; 52 Am. St. Rep. 780; 146 U. S. 657; 55 S. C. 120-122; 1 Rich. Eq. 211; 2 Kent 461; 19 S. C. 590; 14 Enc. of Pl. and Pr. 248; 30 Cyc. 1347; 48 Am. Rep. 616; 96 N. Y. 248; 96 Am. St. Rep. 631; 175 N. Y. 315; 3 Enc. of L., 1st Ed. 536; 90 S. E. Rep. 756; 39 L. R. A. 835; 56 S. C. 296-297; 10 L. Ed. 274; 28 L. R. A. 568; 2 Kent. Com. 458; 45 S. C. 396; 3d Enc. of L. 554; 38 N. J. Eq. 219; 39 L. R. A. 834; 122 N. C. 270; 29 S. E. Rep. 362; 1 Am. St. Rep. 159; 70 Am. Dic. 62; 48 Am. Rep. 312; 38 N. J. Eq. 219. *Exception 11:* 95 S. C. 314; 93 S. C. 17; 66 S. C. 98; 26 S. C. 415; 39 L. R. A. 835; 6 Enc. of L., 2d Ed. 284.

*Messrs. McDonald & McDonald,* for respondents, cite: *As to alleged error in charging the North Carolina law as to giving signals in approaching public crossing:* 109 N. C. 473; 132 N. C. 100. *As to alleged error on the part of the Circuit Judge in charging the law of North Carolina—the error specified that in so charging the jury, he charged upon the facts:* 107 S. C. 222. *As to alleged error on the part of the Circuit Judge in charging the jury in accordance with*

*subdivision 15 of the Automobile Statute of North Caro-
lina—the error pointed out in exception 8 is that such charge
was inconsistent with the case of Dobbins v. Ry. Co.*: 108
S. C. 254; 90 S. E. R. (N. C.) 756; Civil Code of S. C.
1912, vol. I, sec. 3994; 52 S. C. 196-97; 65 S. C. 134; 70
S. C. 380; 70 S. C. 324.

November 11, 1919.

The opinion of the Court was delivered by MR. JUSTICE
HYDRICK.

Besides being unable to concur in all the conclusions stated
by the Chief Justice as to imputing the negligence of the
driver of an automobile to one riding therein, some of which
I deem unnecessary to the decision of this case, I am con-
strained to dissent from the view that there was error in
the charge complained of in the sixth and seventh excep-
tions. The Chief Justice holds the charge erroneous, not
because the statement of the law was incorrect, but merely
because it was inapplicable to the facts of the case, and,
therefore, misleading.

By reference to the fourth and fifth paragraphs of the
answer, it will be seen that defendant specially alleged that
plaintiff and the other occupants of the automobile were
engaged in a common purpose, and that the automobile was
being run at a negligent and reckless rate of speed at the
time of the accident with the knowledge and approval of
plaintiff to accomplish their purpose, to wit, to get to Pine-
ville ahead of the train to put the young ladies on it.

The testimony quoted by the Chief Justice as being relied
upon by the defendant to sustain that view of the case is
clearly susceptible of the inference contended for by defend-
ant, to wit, that plaintiff and the other occupants of
the automobile agreed to and acquiesced in the pur-
pose suggested by plaintiff to get to Pineville in time
to put the young ladies on the train, after she had been told
by her husband that the train was then about due and that

they would have to speed, if they got to Pineville in time. She asked him to look back and see if he could see the train. The circumstances, therefore, made it apparent that, to accomplish the purpose suggested by her, it would be necessary to run at great speed; and there was abundant testimony that they were so running. Some of the witnesses testified that they were going at the rate of 30 or 40 miles an hour. The evidence is undisputed that plaintiff's wishes as to the speed were respected and obeyed. Clearly, therefore, the evidence was susceptible of the inference that she was responsible for the rate of speed at which the automobile was being run. It matters not whether she had the "right" to control the driver, since it is not disputed that she did in fact control him. Clearly, therefore, the evidence warranted the finding that the negligence, if any, in the rate of speed of the automobile, was imputable to her. I think the charge was clearly relevant to the case made by the evidence.

Plaintiff has been advised by defendant's answer and by the testimony adduced that defendant would rely upon that view of the case. The trial Judge says that was the only view suggested to him. We have held in many cases that the failure of the trial Judge to charge the law applicable to every phase or view of the case is not reversible error. If plaintiff had desired instructions as to any other view of the case than that suggested by defendant's pleading and the evidence adduced in support thereof, and the defendant's request to charge, she should have requested them. Having failed to do so, the failure of the Judge to give such instructions was not reversible error.

I concur in overruling the other exceptions, and, for the reasons above stated, I think the sixth and seventh exceptions should also be overruled, and the judgment should be affirmed; and, the majority being of the same opinion, the judgment is affirmed.

MR. JUSTICE FRASER concurs.

MR. JUSTICE GAGE, *concurring.* . I do not concur in the opinion which the Chief Justice has stated on the sixth and seventh exceptions, which is that the plaintiff's remedy is only lost in the event she had the right to control the driver; it is lost if she acted concurrently with the driver in all he did. Nor do I base my judgment on the grounds stated by Mr. Justice Hydrick.

The charge of the Court set out in the sixth exception was relevant to the testimony, but it was in my opinion not so accurate as it might have been.

The allegation of the answer is that the collision was produced by the negligent conduct of the driver of the machine in approaching and crossing the railroad track, that the plaintiff was a participant in that conduct, and that made her party to "a common enterprise," as it is expressed.

If that is true, then the plaintiff's right is barred, for in such a case the act was as much that of the plaintiff as of the driver.

The charge was not so accurate a statement of the law as is the allegation of the answer; for the charge did not expressly include the concurring mind of the plaintiff.

The testimony, though, satisfies me beyond doubt that the managament of the car was the concurrent act of the plaintiff, her husband, and the driver.

The car inferentially belonged to the Langleys, though the testimony is not specific on that point. The driver was nephew to the plaintiff, and he was plainly and properly heedful of the direction of the Langleys. The husband sat by the driver. The relationship of the three was so close that their action was in common; it cannot be separated; it concurred in time and in character; it was identical.

I am sure, therefore, the enterprise generally speaking, was common, that the jury so thought, and settled the issues for the defendant. I am, therefore, in favor of affirmance.

MR. CHIEF JUSTICE GARY, *dissenting.* This is an action
for damages, alleged to have been sustained by the plaintiff,
through the negligence of the defendant.

The jury rendered a verdict in favor of the defendant,
and the plaintiff appealed upon exceptions, which, together
with the complaint and answer, will be reported.

In considering the exceptions, we will follow the arrange-
ment adopted by the appellant's attorney.

First, Third and Fourth Exceptions. It is stated in the
argument of the appellant's attorney that the leading case in
North Carolina, emphasizing the rule of the common law as
to signals, is *Edwards v. Ry.,* 132 N. C. 100, 43 S. E. 585,
in which the Court used this language:

"It is undoubtedly true that the engineer must give such a
signal as will be reasonably sufficient to warn persons on
highways that intersect the track of the coming of the train,
and this must be done by ringing the bell or blowing the
whistle, as the peculiar circumstances of the case may sug-
gest to be the proper method, and the failure of the engineer
to give such a signal would be evidence of negligence.
*Hinkle v. Ry. Co.,* 109 N. C. 473, 13 S. E. 884, 26 Am. St.
Rep. 581. The warning must be reasonable and timely, but
what is reasonable and timely warning must depend upon
the conditions existing at the time in the particular case, and
we are not by any means prepared to say that * * * the
signal should be given in any special way. We know of no
such hard and fast rule as that laid down by the trial Judge
in this case. The bell and the whistle are the appliances
provided for the purpose of giving signals, and one or the
other, as the case may seem to require, must be used for that
purpose, and, in cases of emergency, or when the peculiar
situation seems to demand it, there should perhaps be a resort
to the use of both, but it must be left to the jury to decide,
under proper instructions of the Court * * * what is a
proper signal in any given case."

It was the duty of his Honor, the presiding Judge, to charge the jury that the plaintiff was entitled to reasonable notice of the approaching train; but it was for the jury to determine whether the warning in that particular case was reasonable. The Circut Judge could not have charged the jury that there was negligence by reason of the fact that the warning was not sufficient, without invading the province of the jury.

Second and Fifth Exceptions. In *Case v. Ry.*, 107 S. C. 222, 92 S. E. 473, the Court uses the following language:

"Appellant takes the position that, while it is not a charge on the facts in charging South Carolina law, as there is a statute here, it is a charge on the facts in declaring the North Carolina law, because there is no such statute there. The presiding Judge was bound to declare the law of North Carolina, whether that law was declared in the form of a statute, or the interpretation of the law by its Courts."

This is conclusive of the question raised by the exceptions.

Sixth and Seventh Exceptions. The rule is well settled that a charge which is inapplicable to the facts of the particular case is erroneous, when there are reasonable grounds for supposing that the jury may have been misled, and that the error was prejudicial to the rights of the appellant.

The respondents' attorney has set forth, in his argument, all the testimony upon which he relies, to show that the occupants of the automobile were engaged in a common enterprise, whereby the negligence of any one of the occupants was imputable to the others. He says:

"The facts tending to show that the parties were engaged in a common enterprise, and that the plaintiff was participating in such enterprise, as well as in the control of the automobile, in which she was riding, appear in the testimony of plaintiff's witnesses. This testimony shows that the parties, with the exception of the driver, Wingate, a nephew, were on a pleasure trip to Charlotte, N. C., and were returning to their homes at Lancaster, S. C. After leaving Char-

lotte, it began to rain, and Mr. Langley, the husband of plaintiff, says: 'My wife suggested that when we got to Pineville, that we put the ladies on the train there.' Again he says that they were not running over fifteen or eighteen miles an hour, 'for when it got over that, my wife called it down.' On cross-examination he said: 'We were driving slow. My wife kept saying, "Let's don't go." and I said, "It's up to you." ' Again he says: 'It was about 200 yards from the crossing, that we determined to go to Pineville and put the ladies on the train. The suggestion was made, and that is what we were acting on when we were hit.'

"Will Wingate, the driver, on cross-examination, said: 'Mrs. Langley cautioned me not to run fast, as it frightened her.' Again he says: 'Mrs. Langley called me down once, just out of Charlotte.' Miss Carrie Caskie testified: 'Mrs. Langley suggested that if we got to Pineville on time, that my sister and I could take the train from there to Lancaster, but nothing was said about hurrying, and Mrs. Langley objected to the car being run fast, and we did not run fast.' The plaintiff says: 'I suggested that we put the ladies on the train at Pineville, and go back to my sister's at Charlotte.' Again, she says: 'Made objection to the car being run fast, and my wishes were respected.' Again, she testified with reference to acting on her suggestion: 'Mr. Langley said, when he took out his watch, that "if we get to Pineville, we will have to make good time, because it is about due now." He said this about 100 or 200 yards from the crossing.'

"It thus appears that, at the time the automobile was struck, they were all acting on the suggestion made by plaintiff, and the object was to get to Pineville as quickly as possible, in order to put the young ladies on the train, which the evidence shows switched off at Rock Hill and went to Lancaster. As above stated, Mr. Langley says: 'That is certainly some evidence that the parties were engaged in a common enterprise, and that they were acting upon the sug-

gestion of plaintiff, who not only made this suggestion, but, as the evidence shows, undertook to control the speed of the automobile, which was being driven by her nephew, Will Wingate.'

"Miss Annie Caskie, one of the occupants of the automobile, testified: 'My sister and I had made a visit in Charlotte, and were returning in this car, just going along as friends of Mr. and Mrs. Langley.'"

It will thus be seen that the only testimony, upon which the respondent's attorney relies to show a common purpose, is that the plaintiff made the suggestion that, when they reached Pineville, the ladies could take the train for Lancaster, their home, and that she, her husband, and the driver, should return to Charlotte.

We proceed to the consideration of the principles of law applicable to the testimony.

In 2 R. C. L. 1207, 1208, the rule is thus clearly stated:

"Efforts have been made with varying success, to apply to persons riding in automobiles, the doctrine of imputed negligence, that a person who is himself free from negligence, may still be denied the right to recover damages, for injuries caused by the negligence of another, if the injury would not have occurred, except for the negligent conduct of a third person, over whose actions at the time he had some control in the eye of the law. Where a pure case of carrier and passenger is presented, there would seem to be no doubt, that the negligence of the driver of a motor vehicle, cannot be imputed to a passenger, so as to bar a recovery by him for injuries sustained. *And the prevailing view is, that where the occupant has no control over the driver, even in a case where the relation of carrier and passenger does not exist, the doctrine of imputed negligence does not apply.* In at least one jurisdiction, however, it is held that the negligence of the driver of a private motor vehicle may be imputed to another occupant of the vehicle. Even where the negligence of the driver of a private vehicle cannot be so

imputed, an occupant thereof is not excused from exercising any care, and if he does not exercise such care as a reasonably prudent man would exercise under the circumstances, he cannot recover for injuries thereby occasioned. In spite of these different rules, as to whether negligence may be imputed to a guest or passenger in an automobile, there seems to be no difference of opinion, as to the rule, that when two persons are engaged in a joint enterprise, in the use of an automobile, the contributory negligence of one, will bar a recovery by either, if it is in a matter within the scope of the joint undertaking. And, where a passenger urges the operator to run at an excessive rate of speed, or in any other careless manner, or acquiesces in a similar demand of his comrades, he may be guilty of contributory negligence, and be denied the right to recover against the chauffeur, or any other person whose negligence results in injury to him." (Italics added.)

In *Baltimore R. R. v. State,* 79 Md. 335, 29 Atl. 518, 47 Am. St. Rep. 415, the Court uses the following language:

"It is the generally accepted doctrine of the Courts of this country that the contributory negligence of a carrier, or the driver of a public or private vehicle, not owned or controlled by the passenger, and who is himself without fault, will not constitute a bar to the right of the passenger to recover for injuries received. The only principle upon which such contributory negligence could bar the right of recovery is that the driver should be regarded as the agent or servant of the passenger. But when, as in this case, he has no control over the driver, and does not own the vehicle, and is without blame, and there is no ground, in truth and reality, for holding him to be the principal or master, there is neither reason nor justice in holding him bound by the contributory negligence of the driver. * * * It is conceded that if by his negligence he had injured a third person she would not be liable. She was not responsible for his acts, and had no right and no power to control them."

In *Noyes v. Boscawen,* 64 N. H. 361, 10 Atl. 690, 10 Am. St. Rep. 410, the principle is thus stated.

"The rule that the negligence of the driver or manager of a vehicle is to be treated as the negligence of a passenger, in an action by the passenger against a third party, is put upon the ground that the passenger in selecting the conveyance has placed himself in the care of the driver, and hence must be taken to be in the same position; and the driver, as to third persons, is to be so far regarded as the agent or servant of the passenger as to make the latter chargeable with the driver's negligence, and hence not entitled to recover, although he may have been free from fault himself. * * * This doctrine is declared to be unsound, and in conflict with the principle that no one should be denied a remedy for injuries sustained without fault by him, or by a party under his control or direction; that the relation of master and servant, or principal and agent, does not exist in cases where the passenger has no control over the driver; *that it is the right to control the conduct of the agent which is the foundation of the doctrine that the master is to be affected by the acts of his servant; and that no one is responsible for the acts of another unless the latter is his servant or agent."* (Italics added.)

Our conclusions from these and numerous other authorities, which we do not deem it necessary to cite, are as follows:

That the negligence of the driver of an automobile is not imputable to a person riding therein, unles the occupant has the right to direct and control the manner in which it is to be operated. That the negligence of the driver will not be imputed to the passenger, unless the circumstances are such as would render the passenger liable to a third party for the negligence of the driver.

That it cannot be successfully contended that the occupants of an automobile had formed a common purpose, the

effect of which was to render them liable for the negligence of the driver, unless it was made to appear that they had the right to direct the management of the car. A contrary rule would prevent an injured occupant from recovering damages against the owner of the automobile for the negligence of the driver as the agent or servant of the owner.

That the occupant of an automobile, irrespective of the imputed negligence of the driver, may be guilty of such negligence as will bar a recovery for injuries sustained through the negligence of a third party.

Referring to the uncontradicted testimony, it will be seen that the two young ladies, who were passengers in the automobile, were friends and guests of the plaintiff and her husband; that there is no evidence tending to show that the plaintiff had the right to direct and control the management of the automobile; and that all her suggestions as to the running of the car were in favor of the utmost care and caution.

There is no testimony whatever tending to show that the relation of master and servant, or principal and agent, existed between her and the driver, or that she would have been responsible to third parties for the negligence of the driver.

Upon a motion for a new trial, his Honor thus explained the reasons for his limited charge:

"There was no evidence in the case, which in any degree tended to show any other relation, existing between the parties riding in the automobile, except that of persons engaged in a common enterprise or purpose. There was no evidence brought to the attention of the presiding Judge, which in any way tended to show that the plaintiff was riding in the automobile as the invited guest of the driver, or of any other person, or that the automobile was hired or being driven by any hired driver. It is, of course, well settled *that where one is in an automobile by invitation of another,* or is being

driven in a hired vehicle whereof the driver is furnished by the owner, *the negligence of the driver in such case cannot be imputed to the passenger so riding in such vehicle.* The only view of the evidence upon this point, discussed in the hearing of the presiding Judge, was the view suggested by defendant's counsel that the persons engaged in riding in the automobile, at the time in controversy, were persons engaged in a common enterprise; and consequently the charge was limited upon the point." (Italics added.)

If the Circuit Judge had charged the law to the jury, as explained by him, in refusing the motion for a new trial, the verdict might have been different.

He evidently entertained the erroneous view of the law that the negligence of the driver of an automobile was imputed to the other occupants thereof, although the common purpose was merely to enjoy the social pleasure of riding therein, without reference to the right of an injured occupant to direct and control its management.

It was the duty of the defendant to show that the plaintiff was guilty either of contributory or imputed negligence, of which there was no testimony.

The charge of the Circuit Judge was inapplicable to the facts of the case, and tended to confuse the jury, to the prejudice of the appellant.

These exceptions are sustained.

Eighth Exception. The case of *Welling v. Association,* 56 S. C. 296, 34 S. E. 409 (which was affirmed on writ of error to the Supreme Court of the United States, 181 U. S. 47, 21 Sup. Ct. 531, 45 L. Ed. 739), shows that this exception cannot be sustained, as it in no respect contravenes the public policy or interest of this State.

Ninth and Tenth Exceptions. The ninth exception cannot be sustained, as it has not been made to apear that the Circuit Judge erroneously exercised his discretion in refusing to withdraw the statute from the consideration of the jury.

Nor can the tenth exception be sustained, for the reason that it does not appear from the record that there was a written request to charge.

Eleventh Exception. Even if there was error, it was not prejudicial.

For these reasons, I dissent.

MR. JUSTICE WATTS concurs.