### 12191

### BUILDERS' LUMBER & SUPPLY COMPANY v. CHEEK

#### (137 S. E., 734)

1. TRIAL—INSTRUCTIONS DEFINING GENERAL AGENCY AND METHOD OF ESTABLISHING IT HELD NOT CHARGE ON FACTS WHEN TAKEN IN CONNECTION WITH GENERAL CHARGE.—In action to recover on account for merchandise alleged to have been purchased by husband as agent of wife, charge relative to rights of general agent and as to plaintiff's having waived or otherwise released defendant even though general agency was established, and relative to methods of establishing agency, *held* not erroneous as constituting a charge on the facts, since language was merely descriptive and could not have misled jury when taken in connection with general charge.

2. TRIAL—PURPOSE OF INSTRUCTION IS TO AID JURY TO CLEARLY COMPREHEND CASE AND RENDER FAIR VERDICT.—The purpose of every charge to a jury is to fully and sufficiently state case in order that jury may comprehend and render fair verdict therein.

3. TRIAL—PARTY BELIEVING CHARGE IS NOT CLEAR MUST CALL ATTENTION TO COURT AND PRESENT SUCH REQUEST AS MAY BE NECESSARY.—Party believing that charge as given was not clear and comprehensive has duty to call matter to attention of Court and present such request as might be necessary to enable jury to fully comprehend and form verdict.

4. PAYMENT—ACCEPTING AGENT'S NOTE KNOWINGLY DOES NOT RELIEVE PRINCIPAL UNLESS NOTE WAS GIVEN AND RECEIVED IN PAYMENT.—In order that principal be relieved from liability if person, with full knowledge of principal, accepts note of agent, it·is necessary to show that note was given and received in payment.

5. APPEAL AND ERROR—ERROR IN REFUSAL TO GRANT MOTION FOR NEW TRIAL CANNOT BE RAISED AFTER FAILURE TO MAKE MOTION FOR NONSUIT OR DIRECTED VERDICT (CIRCUIT COURT RULE 77).—Under Circuit Court Rule 77, where appellant failed to make motion for

nonsuit or for direction of verdict, question of error in trial Judge's refusal to grant motion for new trial cannot be raised in Supreme Court on appeal.

Before MAYS, J., Anderson, May term, 1926.   Affirmed.

Action by Builders' Lumber & Supply Company against Mrs. A. G. Cheek.   Judgment for plaintiff, and defendant appeals.   Affirmed.

The charge of the presiding Judge and appellant's exceptions are as follows:

## Judge's Charge

Now the big issue in this case, reduced to its final terms, is whether or not Mrs. Cheek is liable for this debt to the plaintiff, this Builders' Lumber & Supply Company; that is, whether or not she owes it the money.

Now the complaint, which you will have before you in the jury room and can read for yourselves, states this in brief: It states that the plaintiff sold and delivered to the defendant, Mrs. A. G. Cheek, lumber and building supplies amounting to $1,321.64, payable on or before April 1, 1924, and which amount has not been paid, and they ask judgment for that amount.

Mrs. Cheek, by her counsel, answers, denying the material allegations of the complaint.

So that now is the main issue for you to decide: Does Mrs. Cheek owe the plaintiff for this bill of lumber and supplies? But, now, in reaching your conclusion you have to bear in mind certain rules to follow.   You can't merely make an arbitrary decision.   There are certain rules of law that you must bear in mind and follow in reaching your decision as to the questions of fact.

Now, one of the questions that comes into this case is the question as to whether or not Mr. Cheek was the general agent of his wife, Mrs. Cheek, the defendant.   I think I can make the definition of "general agency" a little clearer

to you by reading very briefly from the law books on that question:

"A general agent is defined to be one who is employed to transact generally all the business of the principal in regard to which he is employed; or, in other words, to do all acts connected with the particular trade, business or employment, or to transact all the business of his principal of a particular kind or in a particular place."

It's up to you. The question is for the jury to determine from the evidence in the case, whether or not Mr. Cheek in his transactions was the general agent of his wife, Mrs. Cheek. And that brings in the relationship of husband and wife.

The mere fact that a man is the husband of a woman does not in itself make him her agent. He may have no authority whatsoever; he may have limited authority; he may have wide authority. But the jury can consider the fact, if they are man and wife, just as they can consider other facts in the case, to determine the ultimate fact of whether or not he is her general agent.

Now what is the result if you find that Mr. Cheek is the general agent or was the general agent in this transaction for his wife, Mrs. Cheek? Well, a general agent in acting for the principal, who in this case would be the wife, would have a right to make contracts which would bind her in connection with the matter covered by his agency; and, of course, if that were true, if he were the general agent, if he did make a contract which would bind her—all of these being questions of fact for you to determine—why, then, she would have to stand by his contract, unless the plaintiff, the lumber company, had in some way released her before this matter came into trial.

Now, there are various ways in which agency or similar results of the law can be accomplished. You have heard the discussion made by counsel of agency by estoppel. Well, estoppel simply means this, gentlemen of the jury: That

if you notice certain things going on which on appearances to a man on the outside who does not know what is in your mind would lead him to believe that those things are being done with your consent and under your authority, I say, if you see those things going on and make no objection, but let the other man go ahead and act on the belief that you are responsible, why then you would be estopped to deny that you were the principal in the transaction. It is a principle of ordinary fairness. It is based, not on an actual contract of agency, but of agency having been made between the parties, who are called principal and agent.

As a matter of fact, between Mrs. Cheek, for instance, the principal, and Mr. Cheek, agent, there may not have been any agreement between them that Mr. Cheek could go out and act as agent for his wife, but if with her knowledge he dealt with people in a way to make them as reasonable men believe that he did have authority from her, and she did nothing to deny that authority, why then she would be estopped to deny that he was her agent, and it's the same thing in law as his being agent for her.

Another thing you have heard discussed is the matter of ratification.

If some one undertakes to go out and make contracts to bind you without having authority to do so, you may or may not decide after those contracts had been made that you will stand by them, ratify them. After they have been made, when it comes to your knowledge, you of course can repudiate them and not be bound. But if you assume the position that this man who says he was my agent, and was not my agent at the time, but I will let it pass, I will accept the responsibility for what he has done; that is what you call ratification of agency. And 'that leads to the next point, of the question of undisclosed principal.

It sometimes happens that a person may go out and buy goods or make trades, make contracts of one kind and another, when in all appearances at the time he is trading

for himself, but as a matter of fact he may be trading for somebody else, though not using the name of that other person who is really the principal, who is really the one to get the benefit of the transaction.

Now the law is this: "While a person who has dealt with the agent of an undisclosed principal may elect to hold either the agent, or, upon discovery, the principal, he cannot hold both, and, if with full knowledge of the facts material to his rights he elects to hold the agent, he thereby discharges the liability of the principal; and conversely, if he elects to hold the principal, he thereby discharges the liability of the agent."

That is, where you are dealing with this man who in the first instance appeared to be acting for himself and you learn later that, as a matter of fact, he was acting for somebody else, you can still look to the man who traded with you, the agent, and hold him for it, if you think that is a safer policy for you. But if, on the other hand, if you decide that it's better business when you make this discovery to look to the principal instead of to the agent, why you can do that. But you can't look to both of them; you look to either one or the other. That is the principle in the matter of election on a matter of undisclosed principal.

Now the defendant in this case has handed up certain requests to charge, which have been touched on already more or less, but which I will charge the jury on, with the exception of one, I believe.

Mr. Stenographer, I will indicate where I charge the original, so you needn't copy them.

I will charge request No. 1 (reading same).

I will charge the second request (reading same).

Now, request No. 3, I'm afraid, presents a question of fact in the case, and the Court is not allowed to discuss the facts, but merely to state the principles of law, and the jury applies the law to the facts. The responsibility is upon the jury to determine from all the facts and circumstances

in the case whether there is agency, whether there is estoppel, whether there is ratification, whether there is an undisclosed principal, whether there is an election.  So No. 3 is refused as being on the facts.

No. 4 will be charged (reading same).

No. 5 is charged (reading same).

Request No. 6 is charged (reading same).

Now, gentlemen, is there any issue as to the amount involved, or is it merely a question of whether or not there is liability?  I am not quite sure from the testimony there whether those bills total up the amount of the complaint or not.

Mr. Dagnall: We added a little interest.  The actual stuff amounted to $1,297.53.  There's some interest added there.

The Court: May I ask what is the theory upon which interest is asked?  A running account?

Mr. Dagnall: Our theory is that it's a stated account. Of course, if it isn't, we wouldn't be entitled to any interest at all.

The Court: The law is this, gentlemen: That on a running account, various charges and various payments, interest is not paid, is not chargeable under the law.  On a stated account interest is chargeable at the legal rate of 7 per cent.  And a stated account is this: That where an agreement is reached between the parties that a certain balance is due on the account, that after that agreement is made then interest would run.

Under the evidence in this case I am going to rule that interest would not be allowed.  And as a difference between the account as stated there and the amount asked for in the complaint is an interest charge, I believe.  I am going to rule that in the event that the jury sees fit to find a verdict for the plaintiff, that the verdict would not be in excess of the amount asked for on that account there, some $1,200 and odd dollars.

You first find the facts, then, governed by the rules of law which I have laid down as to whether or not the defendant, Mrs. Cheek, owes this money to the plaintiff, and, if so, you determine the amount from the account in evidence there, which is not questioned as to the accuracy of items.

Now is there anything else, gentlemen, before I explain the form of verdict?

Mr. Sullivan: Mr. Dagnall kept stating that all he had to do was to prove that Cheek was the general agent of his wife when he bought the stuff. I would advise your Honor to explain that that of itself is not sufficient.

The Court: I think I have covered that sufficiently. I am going to read again, however, the definition of a "general agent." It's quite clear, I think, to a layman, but often in reading a proposition in law books it's confusing.

"A general agent is defined as one who is employed to transact generally all the business of the principal in regard to which he is employed; or, in other words, to do all acts connected with the particular trade, business or employment, or to transact all the business of his principal of a particular kind or in a particular place."

It is not, therefore, a universal employment, but "all business of a particular kind." I think the jury now can apply that to the facts in the case, which I am not permitted to discuss, and tell whether or not there was a general agency here. Also, I repeat, that you must also consider whether or not the plaintiff has done anything, even if general agency is established, to waive his claim or otherwise released the defendant.

Now, gentlemen, you have a paper here marked "Summons and Complaint for Relief." On the back of this paper you will enter your verdict which will be in either one of two forms. If you find for the plaintiff, you simply put, "We find for the plaintiff so many dollars and cents," writing it out in words, and not putting it in figures,

and sign your name as foreman. If you find for the defendant in the case, you merely say, "We find for the defendant," and sign your name as foreman.

Defendant's requests to charge were as follows:

*Election to Hold Agent or Principal after Discovery of Undisclosed Principal.*—While a person who has dealt with the agent of an undisclosed principal may hold the agent or, after discovery, the principal, he cannot hold both, and if he elects to hold the agent, knowing of the principal, he discharges the principal. He must elect between the two, and when an election is once made, he must abide by it, and cannot thereafter hold the other. 2 C. J., 844; *Goodale v. Page,* 92 S. C., 413–416; 75 S. E., 700.

*Credit Given Exclusively to Agent.*—A person who, contracting with an agent, has full knowledge of the principal, but extends credit to the agent exclusively, cannot thereafter resort to the principal; and the principal is not bound although the agent acted in the course of his employment and for the principal's benefit. 2 C. J., 836; *Bank v. Cobb,* 58 S. C., 231; 36 S. E., 569.

"A person, having full knowledge of the principal, who accepts the note of the agent, elects to hold the agent and relieves the principal from liability." 2 C. J., 836.

A creditor extending credit to the agent, when he has knowledge of the principal, elects to hold the agent and cannot hold the principal although the principal receives the benefit. 2 C. J., 836; *Moses v. Fogartie,* 2 Hill, 335.

The general rule that a principal, with full knowledge of all the material facts, takes and retains the benefits of the unauthorized acts of an agent, he or she thereby ratifies such act, has no application where the benefit received by the principal is merely incidental and arises out of a credit extended to the agent individually, or where the other party to the transaction did not deal with the agent as such but

in his individual capacity.   2 Corpus Juris, p. 495, and cases therein cited in note.

There is no duty to restore such benefits where, in taking, using, or disposing of a building or other thing, he or she unavoidably enjoys the benefit of work or materials furnished or repairs or improvements made thereon.   2 Corpus Juris, pp. 496 and 497, and cases cited in notes thereto.

### Exceptions

1. Because the Court erred in charging the jury as follows: "Now what is the result if you should find that Mr. Cheek is the general agent, or was the general agent in this transaction for his wife, Mrs. Cheek? Well, a general agent in acting for the principal, who in this case would be the wife, would have a right to make contracts which would bind her in connection with the matter covered by his agency; and, of course, if that were true, if he were the general agent, if he did make a contract which would bind her—all of these being questions of fact for you to determine—why, then, she would have to stand by his contract, unless the plaintiff, the lumber company, had in some way released here before this matter came into trial."

The error is: (a) It was a charge on the facts under the evidence; (b) it limited and confined the defenses available to defendant in the event general agency was established, to a release of herself by plaintiff, and thereby excluded from the consideration of the jury all of the evidence tending to establish any and all of the defenses of defendant except a release of herself by plaintiff; (c) it was in effect charging the jury that in the event general agency was established nothing could avail defendant as a defense except proof of a release of herself by plaintiff.|

2. Because the Court erred in charging the jury as follows: "I think the jury now can apply that to the facts in the case, which I am not permitted to discuss, and tell

whether or not there was a general agency here. Also, I repeat, that you must also consider whether or no the plaintiff has done anything, even if general agency is established, to waive his claim or otherwise released the defendant."

The error is: (a) It was a charge on the facts under the evidence; (b) it limited and confined the defenses available to the defendant in the event general agency was established to waiver or release by plaintiff of "his claim" against defendant, thereby excluding from the consideration of the jury all of the evidence tending to establish any and all of defendant's defenses except waiver or release by plaintiff of his alleged claim.

3. Because the Court erred in refusing to charge defendant's third written request which was as follows: A person, having full knowledge of the principal, who accepts the note of the agent, elects to hold the agent and relieves the principal from liability."

The error is that this request embodied a correct proposition of law applicable to the issues and facts of the case, and therefore the defendant was entitled to have the Court charge same.

4. Because the Court erred in charging the jury as follows:

"Now, there are various ways in which agency or similar results of the law can be accomplished. You have heard the discussion made by counsel of agency by estoppel. Well, estoppel simply means this, gentlemen of the jury: That if you notice certain things going on which on appearances to a man on the outside, who does not know what is in your mind, would lead him to believe that those things are being done with your consent and under your authority, I say, if you see those things going on and make no objection, but let the other man go ahead and act on the belief that you are responsible, why then you would be estopped to deny that you were the principal in the transaction. It is a principle of ordinary fairness. It is based, not on an actual

contract of agency, but of agency having been made between the parties, who are called principal and agent.

"As a matter of fact, between Mrs. Cheek, for instance, the principal, and Mr. Cheek, agent, there may not have been any agreement between them that Mr. Cheek could go out and act as agent for his wife, but if with her knowledge he dealt with people in a way to make them as reasonable men believe that he did have authority from her, and she did nothing to deny that authority, why then she would be estopped to deny that he was her agent, and it's the same thing in law as his being agent for her."

This instruction is erroneous in that: (a) it was a charge on the facts; (b) certain essential elements of agency by estoppel are not included, to wit, that the representation of authority by word or conduct must have been believed and relied upon in good faith by the person asserting the estoppel, and that such person must have changed his position in reliance upon and induced by such representation of authority; (c) that no estoppel arises unless the representation by words or by conduct were made either with the intention that they should be acted upon or under such circumstances as to induce a reasonable and prudent man to believe that they were intended to be acted upon.

5. Because the Court erred in refusing to grant defendant's motion for a new trial on the ground that the undisputed evidence showed that plaintiff had accepted the note of defendant's alleged agent with full knowledge of the alleged principal and thereby elected to hold such agent.

6. Because the Court erred in refusing to grant defendant's motion for a new trial on the ground that the undisputed evidence showed that plaintiff had accepted the personal check of defendant's alleged agent and the latter's personal promissory note in payment and satisfaction of the greater portion of plaintiff's alleged claim.

7. Because the Court erred in refusing to grand defendant's motion for a new trial on the ground that the undisputed evidence showed that plaintiff had extended the credit in controversy to defendant's husband exclusively.

*Messrs. Sullivan & Sullivan,* for appellant, cite: *"When agent held and principal released"*: 2 C. J., 836; 43 Am. Dec., 420, 422; 19 Am. Dec., 211; 74 A. S. R., 42; 6 N. W., 89; 16 S. C., 214; 37 S. C., 590.

*Mr. A. H. Dagnall,* for respondent, cites: *"General denial":* Sec. 410, Vol. 1, Code 1922; 58 S. C., 32; 1 Enc. P. & P., 851; 31 Cyc., 128: *Note not given or received in payment does not relieve principal*s 2 C. J., 837. *Appellant's failure to make motion for non-suit or directed verdict waived error of lower Court in refusing new trial*s Rule 77, Circuit Court; 123 S. C., 406.

April 14, 1927.

The opinion of the Court was delivered by Mr. Justice Carter.

This is an action by the respondent against the appellant commenced by the service of a summons and complaint in January, 1926, for judgment for the sum of $1,321.64, and interest thereon at 7 per cent. from April 1, 1924, alleged to be due to respondent for lumber, building material, and supplies, alleged to have been sold and delivered to the appellant by the respondent and used by the appellant in erecting and repairing buildings on land owned by her in Anderson County. The appellant, in her answer, denied all of the material allegations of the complaint. The case was tried by a jury at the March (1926) term of Court of common pleas for Anderson County before Hon. C. A. Mays as presiding Judge, and resulted in a verdict for the plaintiff-respondent for the sum of $1,297.53, the full amount sued for less the interest; his Honor, the presiding Judge, having directed that no interest could be allowed. Motion was made by the defendant for a new trial upon grounds hereinafter referred to. The motion for a new

trial being overruled, the defendant served due notice of intention to appeal to this Court from the judgment of the lower Court.

The defendant's appeal is presented under seven exceptions which need not be restated here for the reason that the same will be reported.

Before taking up the exceptions for consideration, we shall refer briefly to the issues presented at the trial.

The plaintiff did not have the transaction direct with the defendant, but the transaction was with the husband of the defendant. The plaintiff contended on trial of the case that the husband of the defendant was the agent of the defendant and received the lumber, building material, and supplies from the plaintiff as such agent of the defendant for the use and benefit of the defendant, to be used on the lands of the defendant, with the knowledge, acquiescence, and authority of the defendant; and, further, that the defendant, having permitted her husband to act as her agent generally having permitted him to transact her business for her, and having held him out to the community as her agent for the purpose of transacting all of her business, she is now estopped from denying that her husband was her agent in this transaction, and that therefore the defendant should be held liable. The defendant contended on the trial of the case that her husband alone was responsible and liable for the alleged indebtedness and, further, that the plaintiff had waived any right of action it might have had against the defendant by accepting payments from the husband on the account and by later accepting a note for the balance of the account executed by the husband of the defendant in his individual name, contending that the plaintiff thereby elected to hold the alleged agent instead of the alleged principal, and that therefore the plaintiff cannot now hold the defendant.

No question was raised by the defendant as to the amount owing the plaintiff, and it was also admitted that the lumber,

building material, and supplies were received from the plaintiff to be used in erecting and repairing buildings for the defendant on the land of the defendant in Anderson County, and that the lumber, building material, and supplies were used on defendant's said land in the erection and repairing of buildings thereon; the greater part of the same being used in the construction of a dwelling in which the defendant and her husband reside.

Considerable testimony was offered tending to prove that the husband of the defendant was the agent of the defendant as to all of her business, and especially as to the transaction involved herein. The defendant, in her testimony, on cross-examination as to her husband acting as her agent, responded as follows: "Q. He is your general agent, isn't he? A. He transacts my business."

At the close of all the testimony, no motion being made by either of the parties litigant, his Honor charged the jury as to the law on all of the issues involved and submitted the case to the jury. The jury having returned a verdict for the plaintiff for the full amount asked for, less the interest, as hereinbefore stated, the defendant made a motion for a new trial, which motion was overruled.

The first, second, and fourth exceptions of appellant 1   impute error to the presiding Judge in charging on the facts. After a careful consideration of the charge complained of, the Court is clearly of the opinion that the same did not constitute a charge on the facts. The language of his Honor, referred to under these exceptions, by reason of which the appellant imputes error to his Honor on charging on the facts, was descriptive and could not have misled the jury. Furthermore, everything here is stated hypothetically, and the Court is clearly of the opinion that the language used by his Honor could not be construed to be a charge on the facts, especially when taken in connection with his general charge.

Under these exceptions, the appellant also imputes error to his Honor in limiting and confining the defenses available to the defendant, in the event general agency was established, to a release of herself by the plaintiff, and thereby excluding from the consideration of the jury all of the evidence tending to establish any and all of the defenses of the defendant except a release of herself by the plaintiff, etc., and, further, in not including certain elements of estoppel in the charge. It appears to the Court that if the language of his Honor complained of by the defendant-appellant is taken in connection with his general charge and in connection with appellant's special written requests, which his Honor charged, the same will be seen to be full and sufficiently clear for the jury to comprehend and render a fair verdict in the case, which is the purpose of every charge to a jury. Furthermore, if the appellant had any apprehension that the charge was not clear and comprehensive, it was incumbent upon appellant, under the rule, to call the matter to the attention of the Court and present such request as might be necessary to enable the jury to fully comprehend and perform the duty devolved upon the jury. This the appellant did not do.

The appellant's third exception is as follows:

"That the Court erred in refusing to charge defendant's third request, which was as follows: 'A person having full knowledge of the principal, who accepts the note of the agent, elects to hold the agent and relieve the principal from liability.' "

The Court is of the opinion that the presiding Judge properly refused to charge the request in the language presented. In order for this principle to be applied, it must be shown that the note was given and received in payment. In Volume 2 of Corpus Juris, p. 837, the rule is stated thus: "So where an agent gives his own note to a third person who has full knowledge of the principal, his acceptance generally constitutes an election to extend credit exclusively

to the agent and relieve the principal from liability, but not when it appears that such note was not given or received in payment." In the case of *Keller v. Singleton*, 69 Ga., 703, the Court lays down this rule that "if a vendor sells goods to an agent for his principal, and takes the promissory note of the agent for the * * * price this, without more, will not operate as payment of the debt of the principal; and on failure of payment by the agent, the principal will be liable to an action founded on the original consideration." In the case of *Rathbone v. Tucker*, 15 Wend. (N. Y.), page 498, that Court expressed an opinion similar to the opinion expressed in the Georgia case. The Court is further of the opinion that the presiding Judge charged the law fully and correctly on every proposition and that his charge was fairly and clearly presented.

The remaining exceptions 5, 6, and 7 impute error to his Honor in refusing to grant a motion for a new trial on the several grounds set forth in these exceptions. Under rule 77 of the Circuit Court, appellant having failed to make a motion for a nonsuit or a motion for the direction of a verdict, the question cannot now be raised in this Court, and counsel for appellant has properly abandoned these exceptions.

The charge of the presiding Judge and the appellant's exceptions will be reported.

The exceptions are therefore overruled, and it is the judgment of the Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN and STABLER, and MR. ACTING ASSOCIATE JUSTICE R. E. WHITING, concur.