SANDEL v. WHISENHUNT

(167 S. E., 166)

*Messrs. Berry & Berry* and *Wolfe & Wolfe,* for appellant,

*Mr. W. B. Martin,* for respondent,

December 12, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

This is another of those confusing cases in claim and delivery of personal property, involving the foreclosure of a chattel mortgage of crops and mules. It is much more difficult in our practice to foreclose a mortgage of this character than to foreclose one of real estate. Some day in the near future, as the writer hopes and believes, the procedure as to the foreclosure of chattel mortgages will be much simplified.

The plaintiff instituted this action in the County Court of Orangeburg County seeking to recover the possession of crops grown on certain lands of the defendant and five mules, under a chattel mortgage alleged to have been given to secure the payment of the sum of $1,607.16, representing an indebtedness due the plaintiff by the defendant for advances in goods and for advances in goods and fertilizers. It was alleged that the value of the personal property was $1,500.00, and that the plaintiff was entitled to damages in the sum of $500.00 for detention of the property.

Pursuant to the claim and delivery papers, the sheriff seized certain crops and mules, and, the defendant not procuring their return by the execution of a redelivery bond, the seized property was sold at public outcry, bringing much less than the alleged debt or the stated value.

The defendant, in his answer, denied any indebtedness to the plaintiff, and particularly that any sum was due on the mortgage sued on. His answer and testimony did not agree in all details. It appears, however, the defendant claimed that he had agreed to give the plaintiff a chattel mortgage over certain crops—no mules to be included—to secure a fertilizer account only, amounting to $607.16; that the chattel mortgage was executed by him in blank, for the reason that at the time of the execution it was not known what the bill for the fertilizer would amount to, and that he

consented that the proper amount should be inserted when it was ascertained; that the plaintiff fraudulently, wrongfully, and willfully had inserted in the mortgage not the proper amount, $607.17, but the amount of $1,607.16; and also included therein, as security, five mules, which he was not authorized to do. He alleged that crops and mules not covered by the mortgage were seized and sold at plaintiff's instance, and that the taking, seizure, and sale of his property were willful and fraudulent. The defendant did not demand the return of the seized property, but by way of counterclaim asked for actual and punitive damages in the total sum of $3,000.00.

In arrest and bail proceedings, the plaintiff caused the arrest of the defendant, on the claim that the latter had fraudulently disposed of property subject to the plaintiff's mortgage.

In the trial, there was much conflict and confusion in the testimony of the parties and their respective witnesses. Except as to the few matters herein mentioned, it is not necessary to review the evidence adduced. There was testimony to the effect that the defendant, for the purpose of securing some of his indebtedness to the plaintiff—not the fertilizer account—deposited with, and perhaps assigned to, the plaintiff a chattel mortgage of one Besinger to the defendant, and that on this particular account payments had been made both by Besinger and the defendant; the parties to the action, however, not agreeing as to the payments made or the balance due. The Besinger mortgage was not the one involved in the suit, but it seems, without objection on the part of anybody, the issue as to the amount due, if anything, on that mortgage was also tried. It also appeared in the evidence that one of the mules seized in the action at the plaintiff's instance belonged, not to the defendant, but to one Ashe; that the defendant had formerly owned this mule and had sold it to Ashe; that a few days prior to the service of the papers the defendant had borrowed the mule from

Ashe for use on the former's plantation; and that the animal was in the possession of the defendant at the time of the seizure. The defendant testified that he was responsible to Ashe for the loss of his mule, and would have to make good its value.

There was no motion by either party for a nonsuit or directed verdict as to either actual or punitive damages.

His Honor, County Judge Moss, charged the jury at considerable length as to all the issues in the cause. He gave many instructions requested by the plaintiff. At the instance of plaintiff, he submitted a form of verdict in claim and delivery for the foreclosure of a chattel mortgage, which seems to have complied with all the technical legal requirements as to such verdicts, and which was carefully designed to take care of a decision in favor of the plaintiff on all the material questions involved. In addition, he submitted several special issues to be answered by the jury.

One of the special issues (No. 3), without doubt, intended to refer to the mortgage sued on, was in this form: "Is any amount due on the note and mortgage? If so, how much?" To that the jury answered as follows: "Yes—Before the levy was made by Sheriff on fertilizer and account covered by Besinger's mortgage due at that time, One Hundred Seventeen and 57/100 ($117.57)."

The general verdict of the jury was in this language: "We find for the defendant actual damages Fourteen Hundred, Fifty-five Dollars ($1,455.00) and punitive damages Seven Hundred Dollars ($700.00)."

There was no objection by either party to the form of the verdict rendered, and no suggestion was made to the Court that its meaning was doubtful until after the jury had been discharged.

The plaintiff moved for a new trial on five grounds: (1) Because the verdict did not conform to the verdict required by the statutes in claim and delivery cases, and was therefore fatally defective; (2) under the applicable law, no punitive

damages could be recovered; (3) under the facts, no puni-tive damages could be recovered; (4) no actual damages could be recovered, as the jury found a balance due on the mortgage sued upon; and (5) the verdict for actual damages was greatly in excess of the property seized.

The trial Judge refused a new trial, but held that the ver-dict for actual damages should be reduced in the amount of $117.57, evidently the sum returned by the jury as being due the plaintiff by the defendant on the Besinger mortgage account.

From the judgment unfavorable to him, which we in-terpret, under the order of the County Judge, to have been one for $1,337.43—$1,455.00 less $117.57—the plaintiff has appealed to this Court.

The seventeen exceptions, as stated by the appellant's counsel, raise only six questions and we shall follow their example in disposing of the issues made.

First, is the verdict fatally defective in form, and for that reason should it have been set aside and a new trial ordered? Appellant's position is that the verdict did not correspond with the provisions of law as to ver-dicts in claim and delivery actions. The position is based upon the decision of this Court in *Wilkins v. Willimon,* 128 S. C., 509, 122 S. E., 503. That action was one between the plaintiff, who won in the original claim and delivery action, and the surety of the defendant in that action on the replevin bond signed by him. In that case, Mr. Justice Cothran, for this Court, laid down the proper forms of verdicts in claim and delivery cases, especially the verdicts to be returned when the result of the suit is favorable to the plaintiff. But that case is not applicable here. The verdict here was favor-able to the defendant, not to the plaintiff. While the action here on the part of the plaintiff was one strictly in claim and delivery, the defendant did not ask a return of the prop-erty; the property had been sold at the instance of the plain-tiff, and apparently, so far as the record here shows, it was

beyond the power of the plaintiff to return the property. The defendant asked for damages for the unlawful seizure of his property, and for the fraudulent conduct of the plaintiff in the execution of the mortgage, alleged by the defendant to have been procured from him by the plaintiff. Under the case of *Duc v. Seel,* 134 S. C., 10, 131 S. E., 778, 780, where the *Wilkins* case was reviewed, the verdict in this case was in proper form, since the defendant had the right "to waive a verdict for the return of the property."

The verdict of the jury on the special issue did not have reference to the mortgage sued upon. It did refer to the "side issue" injected into the case, the amount due by the defendant to the plaintiff on the Besinger mortgage account. Clearly, taking the general verdict and the special verdict together, the intention of the jury was to find that the defendant did not owe the plaintiff any amount on the mortgage sued upon in the action.

The trial Judge did not submit to the jury any issue as to the amount due on the Besinger mortgage account, and, perhaps, he would have been justified in striking from the record the verdict as to that account returned by the jury. No question as to that special verdict, however, was raised. The action of the Judge in ordering a new trial *nisi,* unless the defendant remitted the amount the jury said he was due on the Besinger mortgage account from the verdict in his favor, was clearly in favor of the justice and equities between the parties as found by the jury. The plaintiff certainly cannot complain at that action, for it was beneficial to him. The defendant has not questioned what was done.

The second position of the appellant is that punitive damages could not be recovered in the cause, and his third position is that actual damages were not recoverable under the law and the facts. The two questions may be disposed of together.

136

Under rule 76 of the Circuit Court, the point that there was no evidence to support the respondent's alleged cause of action for actual damages, or his alleged cause of action for punitive damages, should have been made by a motion for nonsuit or a motion to direct the verdict, and the failure of the appellant to make either of those motions precludes this Court from reviewing his exceptions in that regard. See *State v. Bowman*, 137 S. C., 364, 135 S. E., 360; *Builders' Lumber & Supply Co. v. Cheek*, 139 S. C., 299, 137 S. E., 734, and many other cases cited in the annotation under rule 76 (volue 1, Code of 1932, p. 1266).

To relieve any feeling counsel for the appellant may have that they failed in any way to discharge their duty to their client in the trial of the cause, we may say, however, that a review of the evidence shows conclusively that any motion for nonsuit or directed verdict in favor of the appellant should have been overruled by the trial Judge.

The fourth question submitted complains of certain instructions to the jury given in the charge of the trial Judge. In the exception (No. 14), it is simply stated "that the Judge erred in charging the jury." The alleged error is in no wise pointed out. In the brief, a part only of the instruction complained of in the exception is set forth. The exception is not argued at all. Under the rules of this Court, the question, and the exception upon which it is based, cannot, under the circumstances, be passed upon, and the exception must be regarded as having been abandoned.

In the fifth question made by the appellant, it is asserted that damages may not be recovered in an action of claim and delivery after bond given for other than the wrongful detention of the property. We assume that, in raising this question, the appellant intends to take the position that the defendant could not recover any damages, either actual or punitive, for anything that occurred

after the execution of the bond in claim and delivery on the part of the plaintiff. As to punitive damages, that position is correct. (See Section 661, Code of 1932.) The trial Judge in this case recognized that provision in the law, and charged the jury accordingly. The same section of the Code expressly provides, however, that actual damages may be recovered by the defendant for the unlawful taking and withholding of his property by the plaintiff, and there is no provision limiting the recovery of actual damages after the filing of the bond of the plaintiff. See *Manley v. Bailey,* 151 S. C., 366, 149 S. E., 119.

Finally, in the sixth question, it is urged that the defendant in the cause should not have been allowed to recover $150.00, the alleged value of the mule owned by Ashe and not by the defendant. The record before us does not show that this question was raised by the appellant in the lower Court. We, of course, cannot pass upon any questions which were not there presented. We may say, too, that there is nothing to show that the jury included this sum of $150.00 in the verdict it rendered for actual damages. No special issue as to the Ashe mule was presented to the jury.

The judgment of this Court is that the judgment of the lower Court be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.