13112

KEY v. CAROLINA & N. W. RY. CO.

(162 S. E., 582)

*Messrs. F. G. Tompkins, J. E. McDonald* and *McDonald, Macauley & McDonald,* for appellant,

*Messrs. Hemphill & Hemphill* and *Gaston, Hamilton & Gaston,* for respondent,

April 9, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

In the first trial of this case, a judgment in favor of the plaintiff in the total sum of $10,000.00, including both actual and punitive damages, resulted. On appeal to this Court by the defendant, that judgment was reversed. 150 S. C., 29, 147 S. E., 625. The unanimous opinion of the Court at that time, however, sustained the right of the plaintiff to have

the case submitted to the jury on its merits. The second trial in the Court of Common Pleas for Chester County, before Hon. M. M. Mann, presiding Judge, and a jury, resulted in a verdict in favor of the plaintiff for $25,000.00, actual damages, thus showing that sometimes it is dangerous to appeal; and confirming the wise saying that in some instances it is better to "bear those ills we have than fly to others that we know not of."

The appeal by the defendant to this Court presents sixteen exceptions, but these are treated in the brief as presenting only eight propositions for consideration.

Appellant's first proposition is that the presiding Judge erred in not granting its motion to require the jury to find a special verdict upon certain particular issues or questions of fact. Section 542 of the Code of Civil Procedure (Vol. 1, Code of 1922), leaves it altogether to the discretion of the trial Judge to decide whether or not he should submit special issues of fact to the jury. *Floyd v. Insurance Co.*, 110 S. C., 384, 96 S. E., 912. This proposition must be decided, therefore, against the appellant.

The exceptions grouped as propositions, 2, 3, 4, 5, and 6, relate to the charge. The appellant submitted twenty-four requests to charge, twenty of which were charged without any modification. The nineteenth request referred to punitive damages, and it is eliminated by the verdict, which did not include punitive damages. Three of the requests, the tenth, twenty-first, and twenty-fourth, were withdrawn; counsel for the appellant stating to the Court that they had been covered in the general charge. Among the requests withdrawn were the following:

"10. If you find from the evidence that the driver of the car in which plaintiff was riding, and who had charge of the person of the plaintiff, heard the signal or whistle of the approaching train in time to have stopped his car, and, knowing that the train was approaching, still attempted to cross the track without making any effort to ascertain how close

the train was, then such fact would render the said party guilty of gross contributory negligence as a matter of law, and the plaintiff could not recover. In such case the continuous statutory signal could not have given a more complete warning than such person had; and in such case if you find from the evidence that this was true, it would be the negligence of the person having charge of the person of plaintiff in failing to heed the approach of the train, that would be the proximate cause of the injury."

"24. While, under the decisions of the Supreme Court, there is a presumption that the failure to give the statutory signals creates a presumption that such failure is the proximate cause of any subsequent injury by collision and also affords the presumption that such failure was willful and negligent, still such presumptions are like other presumptions of law in that they may be rebutted by all other evidence in the case; and if the evidence rebuts such presumption, then the proximate cause of the injury, as well as willful and wanton injury, must be established by the evidence and from all of the surrounding circumstances in the case."

The respondent, while riding in an automobile owned by another, upon the invitation of the driver of the vehicle, was injured in a collision at a railroad crossing. His complaint set up both negligence and willfulness in the operation of the train, and the particular acts of negligence complained of were specified in considerable detail. Taken as a whole, the charge of the Judge clearly presented the issues made by the pleadings. There was no suggestion on the part of the appellant, either by request to charge, or request for a fuller charge, or by objection or otherwise, that any of the specifications of negligence, alleged in the complaint, should have been withdrawn from the jury's consideration:

As pointed out in many cases, and lately in *Sumter Trust Co. v. Holman,* 134 S. C., 412, 132 S. E., 811, 814: "The whole charge must be considered in determining if there was prejudicial error." So the requested

instructions submitted by the appellant, which covered in detailed statement every phase of the law of negligence applicable to the case, must be taken together with the general charge; and when the charge here under examination is so considered, we think it was free from harmful error. See *Gladden v. Railroad,* 142 S. C., 492, 141 S. E., 90; *Tyner v. Railroad,* 149 S. C., 89, 146 S. E., 663.

At the request of the appellant, the trial Judge particularly called to the attention of the jury the proposition that, "in crossing cases under the statute law of the State," an automobile driver's gross, willful negligence would be imputed to any occupant of the car, and would bar recovery for any injury sustained in such collision. It is to be noted, too, that one of the requests withdrawn by the appellant (No. 10), was directed to the same point. If it had been charged, and doubtless it would have been if it had not been withdrawn, it would have cleared up any seeming confusion that the general charge on imputed negligence might have left in the mind of the jury.

As to the charge of the trial Judge concerning "common enterprise," the testimony did not warrant the inference that the respondent was engaged in a "common enterprise" with the driver of the automobile at the time of the collision; and in submitting that question to the jury, the charge was favorable to the appellant. The general rule, supported by abundant authority, has thus been stated: "A mere guest or gratuitous passenger riding with the driver of a motor vehicle by invitation is not engaged in a common or joint enterprise with the driver, and this is so notwithstanding the guest asks to be driven to a certain place, indicates the route to be taken, or points out the dangers to be encountered, or that both parties have certain plans in common." 42 C. J., 1179.

Since the complaint alleged that the appellant's failure to give reasonable and adequate warning was wanton and willful, the issue of willfulness was prop-

erly before the jury, for it has been held that evidence of the failure to give statutory warning signals requires the submission of the issue of willfulness. *Brogdon v. Railroad,* 141 S. C., 239, 139 S. E., 459. The appellant now objects to the charge of the trial Judge because he instructed the jury, in effect, the "last clear chance" or "discovered peril" doctrine, by stating that if the engineer sees one going on the track, "even though they are doing wrong," then the engineer "must do all that he reasonably can to put them on notice of the approach of the train and the presence of imminent danger, regardless of statutory requirements." The charge given is sustained by the declaration of this Court in *Chisolm v. Railroad Company,* 121 S. C., 394, 114 S. E., 500, 502. In that case, this was said:

"The inquiry must therefore proceed upon the hypothesis that there was a willful or wanton disregard of the duty owed by defendant to give due and timely warning of the approach of train. * * *

"As a matter of law the right of the enginemen on the lookout to assume that the intestate in apparent possession of his faculties would not go upon the track in front of the advancing train did not relieve them of the common-law duty of giving reasonable notice by signal of the train's approach to the crossing. If because of the failure to give such notice the intestate went upon the track and was injured, however derelict he might have been in failing to exercise due care himself, it cannot be held that his own default was the sole proximate cause of the injury.

"In order to bar a recovery, therefore, the appellant must sustain the * * * proposition, * * * that the conduct of the intestate amounted to a wanton and willful default which contributed to the fatal injury as a proximate cause."

Exception is taken to the charge of the trial Judge upon the matter of damages. The evidence disclosed beyond question that the respondent sustained very

severe injuries, permanent in nature; that he was confined in a hospital for many months; and that there had resulted serious impairment of his ability to earn a living. In referring to actual damages, the Judge said the verdict should be "such and what as, in dollars and cents, you think would place Mr. Key where he was before he was injured, if possible. It cannot be done, but you must do the best you can." It is now said that the instruction given was a charge upon the facts and also that it left the jury to speculate as to the amount of damages, if any, that should be found for the respondent. It is also urged in line with this argument that the verdict was so excessive that it indicates capriciousness, bias, and prejudice. We can see no objection to the charge, especially since the appellant did not at the time complain of its insufficiency, and made no request that any further charge be given. Neither can we say, as a matter of law, that the Judge failed to exercise properly his discretion to reduce the verdict, for the great injuries received by the respondent warranted a substantial verdict. *Veronee v. Charleston, etc., Co.*, 152 S. C., 178, 149 S. E., 753.

In its answer, the appellant set up an alleged agreement on the part of the respondent to release and discharge it from liability upon payment by the appellant of certain hospital and surgeons' bills, and that pursuant thereto the appellant fully performed the agreement by assuming, by and with the consent of the Chester Sanatorium, the payment of such charges and expenses. This alleged agreement was denied by the respondent. The question whether or not he entered into such an agreement was submitted to the jury under very clear and appropriate instructions, and the trial Judge, following the former decision of this Court, told the jury that the agreement was one the respondent had the right to make, and if he did make it, he was to be held to it. The testimony on this issue to sustain a finding against the appellant's contention was ample. Moreover, the appellant having failed to make a motion for a

nonsuit or a motion for a directed verdict, it cannot now properly charge error on the part of the trial Judge to grant its motion for a new trial because of these matters. *Builders, etc., Co. v. Cheek,* 139 S. C., 299, 137 S. E., 734.

The appellant's fourth proposition raised by Exceptions 4, 5, 7, and 10 is stated as follows: "There was error in charging the jury with reference to proximate cause under the statutory cause of action, if there was a failure to give the required signals, as such construction of the statute was contrary to the Constitution of the United States."

Counsel for the appellant frankly admit in their brief that this constitutional question was not raised in the lower Court, but they insist that it is not necessary to raise such question except in this Court, and especially since a similar constitutional question, involving the validity of the crossing statute, is involved in *Ford v. Railroad Company*—a case now pending in this Court and undecided—the rights of the appellant should be preserved. The respondent insists, and without doubt rightly so, that we should follow the well-settled line of decisions holding that such a question cannot be considered on appeal unless it has been first raised in the Court below. *Bomar v. Railroad Co.,* 30 S. C., 450, 9 S. E., 512; *Burnett v. Railroad Co.,* 62 S. C., 281, 40 S. E., 679; *Hunter v. Bamberg County,* 63 S. C., 149, 41 S. E., 26; *Henry Mercantile Co. v. Graham,* 108 S. C., 125, 93 S. E., 331; *White v. Railroad Co.,* 142 S. C., 284, 140 S. E., 560, 57 A. L. R., 634.

The judgment of this Court is that the judgment below be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting): I do not propose to discuss all of the exceptions, or all of the points raised upon this appeal. Without conceding the correctness of the disposition of others, in the opinion of Mr. Justice Blease, I

shall address my observations to what I consider reversible errors in the trial below.

The plaintiff, in his complaint, has "jumbled" (that is to say, joined without a separate statement of each), a cause of action under the signaling statute (Sections 4903 and 4925, Vol. 3, Code 1922), with a cause of action under the common law for negligence in the operation of the train with which the automobile in question collided. Perhaps under the liberal interpretation which the Court has given to what is known as "the jumbling statute" (Section 427, Code Civ. Proc.), the plaintiff had the right to do this. At any rate, no objection thereto has been urged by the defendant, and I shall consider them as having been separately stated. Much confusion and many errors would have been avoided, I think, if the presiding Judge had done likewise.

The two causes of action are attended by distinctly differentiating circumstances, and consequently require different applications of the law. Under the statute the failure to give the signals prescribed by Section 4903 is invariably held, not only to be negligence *per se,* but to raise a presumption, not only that it resulted in the collision, but that it was the proximate cause thereof, and without further evidence warranted the imposition of punitive damages. The statute also provides, upon the question of contributory negligence on the part of the traveler, that it must appear to have been willful or gross, or in violation of the law. Under the common law, there is no presumption of negligence, and as in every case of negligence, the conduct of the defendant must be shown not only to have been negligent, but that it produced the result as a proximate cause; and as to contributory negligence, which concurred with the defendant's negligence, any act of the injured person, of ordinary negligence, contributing as a proximate cause to the result, will bar his recovery.

As is said in *Sanders v. R. Co.,* 97 S. C., 423, 81 S. E., 786, 788: "There are material differences between a case at common law and one under the statute. In a case at common

law, plaintiff must prove the failure to ring the bell or blow the whistle, that the omission was negligence, and that such negligence was the proximate cause of the injury. In a case under the statute, if the plaintiff proves the failure to give the signals required, it is negligence *per se*, which is presumed to have caused the injury. *Strother v. Railway* [47 S. C., 375, 25 S. E., 272], *supra.* In the former, the action will be defeated, if the defendant proves that the plaintiff was guilty of ordinary contributory negligence. In the latter, defendant must prove that plaintiff's contributory negligence was gross or willful, or that he was acting in violation of law, and that it contributed to the injury."

There is another marked distinction between the two causes of action: When reliance is placed by the plaintiff solely upon the common-law cause of action, the negligence of the driver of a car is not imputable to an occupant of the car, unless it be shown that the relation of the parties is such as has been denominated participants in a common enterprise, joint adventurers, a principle that will hereinafter be discussed. When reliance is placed solely upon the statutory cause of action, all questions of common enterprise, joint adventure, pass out of the case, for under the express terms of the statute, the negligence of the driver, one who has charge of the person of the one injured, bars a recovery by the latter, if the driver is shown to have been guilty of gross or willful negligence or was acting in violation of law, and that such act contributed as a proximate cause to the injury. The principle of the imputation of the negligence of the driver to the person injured is not at all involved; the statute provides an absolute bar, under the circumstances stated, to his recovery.

The distinction is clearly developed in *Neely v. R. Co.,* 123 S. C., 449, 117 S. E., 55, 57. In that case the Court charged: "We have the common-law rule, or we might call it the general rule, which is clearly set forth in *Langley v. Railroad,* 113 S. C., 45, 101 S: E., 286, and in *Latimer v.*

*Anderson County,* 95 S. C., 187, 78 S. E., 879, that the negligence of a driver of an automobile is not imputable to a passenger or invited guest or an occupant of the car unless the relation of master and servant exists between the passenger and driver, or unless they were engaged in a common enterprise. The testimony in this case can mean but one thing, and that was that plaintiff's intestate was the invited guest of the driver of the automobile, and with one exception, to be set forth below, plaintiff's intestate could not be held responsible or have imputed to her any act of negligence of the driver of the car." The Court said: "It should be noted that while his Honor charged the general rule that the negligence of the driver is not imputed to the passenger unless the passenger has the right to control the management of the machine, yet the statute made an exception in crossing cases."

In this case the defendant contended that the driver of the automobile with whom the plaintiff, Miss Neely, was riding, and who for the moment was in charge of her person, was guilty of a violation of law in not providing the automobile with good and sufficient brakes. The plaintiff contended that there was no evidence that Miss Neely knew of the defects in the brakes and could not be held responsible for a violation of the law by the driver. In reference to this contention the Court said: "We have just seen that the statute gave immunity in crossing cases, where 'the person having charge of his person or property was at the time of the collision guilty of gross or willful negligence, or was acting in violation of the law.' "

In *Dozier v. Charleston Company,* 133 S. C., 335, 131 S. E., 592, 593, the Court said: "In considering this matter, it must be recalled that this is not a crossing case, where the statutes make a change in the rule by express legislation on the matter. This distinction will be readily seen by an examination of the *Neely case* hereinafter cited." *Langley v. Railroad,* 113 S. C., 49, 101 S. E., 286. Not being a crossing

case, the principle was applicable that the relation of common enterprise must have existed; showing that in a crossing case the common enterprise doctrine has no application where the action is brought under the statute.

In *Brogdon v. R. Co.,* 141 S. C., 238, 139 S. E., 459, 462, the following charge was approved by this Court: "The jury is charged that the negligence of the driver of an automobile is not imputable to an occupant of the car, unless the relation of master and servant exists between the passenger and the driver, or unless they are engaged in a common enterprise, or unless the driver has the custody of a person such as an infirm person or an infant. This is the common-law rule enforced in this State. This rule, however, is modified by the statute which I will read to you to the extent that if the jury should find that the person having charge of his person or property was at the time of the collision guilty of gross or willful negligence or was acting in violation of the law and that such gross or willful negligence or unlawful act contribute to the injury." (This sentence is incomplete; there should follow the words "the person injured would not be entitled to recover.") The Court adds: "The common-law rule as to the giving of signals by railroad trains at crossings has been modified by statute in this State."

The two causes of action so plainly appearing to be accompanied by such marked distinctions, incidents, essentials, and defenses, it seems imperative that they should have been separately treated and the jury not left in doubt and confusion as to which certain principles of law announced should be applied.

If this had been done, the following error would not have been committed:

His Honor charged the jury: " * * * the law says that the railway company is liable for such damages as that person may suffer, unless it is shown that in addition to a mere want of ordinary care, the person injured was at the time of the collision, guilty of gross or willful negligence,

or acting in violation of the law, and that such gross or willful negligence contributed to his injury."

His Honor omitted a very vital portion of the statute. It provides a bar to the recovery of damages by the injured occupant, not only if he was at the time of the collision guilty of gross or willful negligence or was acting in violation of law, and that such conduct contributed to the injury, but if the person having charge of his person was guilty of similar conduct. By this interpretation of the statute his Honor confined the immunity to the conduct of the person injured. It was an exceedingly vital point in the defense, as there was abundant evidence from which the jury may have concluded that under the circumstances the driver was guilty of such negligence as would constitute a bar to the plaintiff's recovery.

The testimony of the plaintiff and of Leckie, the owner and driver of the car, his principal witness, shows beyond the shadow of a doubt that both were perfectly familiar with the crossing in question; that the afternoon was hot and dry; that the highway approaching the crossing, by reason of passing cars, was filled with dust which settled as a cloud upon the crossing; that but for the dust the view towards the east, from which direction the train approached, was clear for several hundred yards; that they knew that they were almost upon the schedule time of the train; that they did not stop their car although nothing could have been more exclamatory of danger than the known location of the crossing and the cloud of dust; that they slowed down on account of the dust from 20 to 10 miles an hour and had come within 15 feet of the track when the coming train was noticed; that their car could have been stopped in 5 feet, and at that distance from the track the train could have been seen 600 yards up the track. It is difficult to conceive of a clearer case of gross negligence upon the part of the driver of the car. The charge of his Honor withdrew from the attention of the jury the fact that under the statute the gross negligence

of the driver would exculpate the railroad company, limiting their attention to that of the person injured.

In 33 Cyc., 1024, it is said: "Where a traveler's view at a railroad crossing is obstructed by dust, smoke, or steam from a passing train or otherwise, it is his duty to wait until his view becomes unobstructed before going upon the tracks; and it is contributory negligence for him to attempt to cross without waiting for the smoke or dust to clear away, or without stopping to listen for approaching trains, particularly where the traveler is familiar with the crossing and knows that trains are likely to pass at any moment."

In *Chisolm v. R. Co.,* 121 S. C., 394, 114 S. E., 500, 503, the Court said:

"A railroad company and a traveler on a highway crossing are charged with a mutual duty of keeping a lookout for danger, and the degree of vigilance required of both is in proportion to the known risk; the greater the danger, the greater the care required of both. (Citing cases.)

"On reaching a railroad crossing and before attempting to go upon the track, a traveler must use his senses of sight and hearing to the best of his ability under the existing and surrounding circumstances; he must look and listen in both directions for approaching trains, if not prevented from so doing by the fault of the railroad company, and to the extent the matter is under his control must look and listen at a place and in a manner that will make the use of his senses effective. This is merely a statement in the concrete of the fundamental principle of the law of negligence that—

" 'Ordinary prudence requires every person who is in the full enjoyment of his faculties of hearing and seeing, before attempting a dangerous act or operation, to exercise them for the purpose of discovering and avoiding peril.' 20 R. C. L., 113."

The principle has been affirmed in a multitude of cases from other jurisdictions, applied particularly to cases where the vision of the traveler was obscured by dust, smoke, or

other obstructions not attributable to the negligence of the railroad company. See note 41 A. L. R., 405; note 56 A. L. R., 547, where many decisions are cited. Particular reference may be made to *Oleson v. R. Co.,* 143 Ind., 405, 42 N. E., 736, 32 L. R. A., 149; *Heaney v. R. Co.,* 112 N. Y., 122, 19 N. E., 422; *Foran v. R. Co.,* 147 N. Y., 718, 42 N. E., 722; *Beynon v. R. Co.,* 168 Pa., 642, 32 A., 84; 3 Elliott on R. R. (3d Ed.), § 1661.

Practically the same error occurred in the charge: "It requires the act of the traveler on the highway to be of greater degree of negligence than the negligence of the railroad company, in order to defeat the right of recovery on the part of the traveller."

The charge in full was this: "Now, with reference to the crossing; you see where the law imposes a somewhat different responsibility upon a railway company operating a train and a person attempting to cross the track at a crossing. Any act of negligence, so far as negligence on the part of the railway company, such as the failure to blow a whistle or ring a bell, makes the railway company liable for any injury suffered by the traveller, and the traveler can recover, unless, in addition to ordinary, to the mere want of ordinary care, or mere ordinary negligence, he has been grossly or willfully negligent. It requires the act of the traveler on the highway to be of greater degree of negligence than the negligence of the railway company in order to defeat the right of recovery on the part of the traveler. Now you keep that in mind when considering the liability under the statute."

Here again his Honor confined the defense of contributory negligence, to the gross or willful conduct of the person injured, when the statute makes such conduct on the part of the driver having charge of the person of the injured one, as well as that of the person injured, a complete bar to his recovery. The error was emphasized by his adding: "Now you keep this in mind when considering the liability under the statute."

The charge is subject to another objection:

The correct interpretation of the statute is that the immunity of the person injured, from the charge of ordinary negligence, and the requirement that he be guilty of gross or willful negligence which would defeat his right of recovery, applies only to the failure of the railway company to sound the statutory signals on approaching a crossing; any act of negligence of the railway company other than a failure to observe the statutory requirement may be met in defense by proof of the ordinary negligence of the traveler constituting contributory negligence.

The error is as plainly developed in the following charge: "If you find that the plaintiff has made out his case by the greater weight of the evidence as to any of the alleged specified acts of negligence, then he has won his case; unless you find that the defendant, by some of its additional defenses, in addition to making him bring his case by the greater weight of the evidence, had proven him negligent; and you heard me tell you what those special defenses were—one, that they were engaged in a common enterprise; one, the act of negligence on the part of Leckie or Key; another, the act of negligence on the part of Leckie was also the act of negligence on the part of Key; in other words, that they were grossly negligent; that Leckie was grossly negligent and that Key was grossly negligent; and that they come within the law that their gross negligence caused the injury."

The most serious error in the conduct of the trial of this case, in the Court below, is the misapprehension disclosed in the charge of the presiding Judge, of what for brevity's sake may be referred to as the "common enterprise" doctrine, and the confusion as to its application to the cause of action based upon the signaling statute and to that based upon the common law—a confusion largely engendered by the failure to treat the two causes of action separately.

The presiding Judge appears to have labored under the misapprehension that the plaintiff cannot be charged with

the contributory negligence of the driver of the car, to the extent required by the statute, so as to defeat his cause of action under the statute, or have imputed to him a like degree of negligence of the driver with like effect, or to be charged with the contributory negligence of the driver to the extent permitted by the common law, so as to defeat his cause of action under the common law, unless it appear that the relation of the plaintiff as an occupant of the car, to the driver was that of a common enterprise or joint adventure.

I have endeavored to show that the doctrine of imputed negligence has no place in an action based upon the statute; that the negligence, of the prescribed degree, of either the injured person or of the driver who has charge of his person, is by specific provision of the statute made a complete bar to recovery.

But where the cause of action is based, not upon the statute, but upon common-law negligence, the doctrine of imputed negligence has a prominent place in the picture and depends for its application upon the principles of the common enterprise doctrine, regardless of its degree.

So that as applicable to the plaintiff's common-law cause of action, it becomes vital to decide whether the circumstances present an instance of common enterprise.

The general rule, established by a myriad of authorities, is that a mere guest or gratuitous passenger, riding with the owner and driver of a car by invitation, who has no right to direct the movement of the car or the conduct of the driver, and who does not attempt to do so, cannot be considered as having been engaged with the driver in a common enterprise, so that the negligence of the driver may be imputed to him as contributory negligence.

But it is equally well settled that the occupant of the car may not abandon the obligation resting upon him to exercise due care under the circumstances and intrust his safety to the driver's care; he may by reason of his position in the car, by his familiarity with the crossing and its condition, and by

the known danger of the situation, be charged with a duty of taking positive action to control the movement of the car and the conduct of the driver, in order to avert a pending calamity. If this obligation should under the circumstances be imposed upon him, it becomes a duty to take action, and the duty necessarily involves the right to control the conduct of the driver for their mutual protection. The testimony of the plaintiff plainly shows that he was familiar with the crossing and that they were practically upon the schedule time of the train; that he was sitting on the front seat by the side of the driver; that he knew that the cloud of dust overhanging the crossing obscured his vision of an approaching train; and yet he allowed the driver to blindly proceed without stopping where the view would have been open to him. Under the authorities it was his duty to warn the driver, apparently impervious to a sense of danger, of the risk he was running; and if a duty, it was his right, to this extent, to control the movement of the car and the conduct of the driver. Unquestionably I think that the collision was due to the concurrent acts of negligence of the plaintiff and the driver, which clearly presents a case of common enterprise, a joint adventure.

In defining the liability of one riding in a vehicle for the negligence of the driver, it is said in 2 Cooley Torts, 1473: "If the driver is the plaintiff's servant or under his control, the negligence of the driver is imputable to the plaintiff. So if the two are engaged in a joint enterprise and each has an equal right to direct the movement of the vehicle."

In *Crescent Co. v. Stone,* 211 Ala., 516, 101 So., 49, 51, the Court said: "Charge E above is misleading in putting the emphasis on 'actual' control instead of the right and duty of joint control. If the two men, both riding in the car, engaged in the joint enterprise of running it * * *, both having a joint duty to so operate it as not to negligently injure others on the road, it cannot be said there is no joint

liability in any event, because one takes no actual control while the other is driving." ·

In *Coleman v. Bent,* 100 Conn., 527, 124 A., 224, the common right to control the operation of a car by an occupant is referred to as the correlative of the common responsibility for negligence in its operation.

His Honor charged the jury as follows: "Right there, I am going to tell you what a common enterprise is. It is a mission, an enterprise, in which two or more persons engage, having in mind a common end, a common purpose, both taking part and both exercising the right of domain, the control over the vehicle in which they are riding; the one or the other having the right to direct the course that they may pursue or the way in which they may go."

This is a misapprehension of the controlling principle of the law applicable to cases of common enterprise. It injects a false element, that the party not driving must have taken a part in the movement of the car, must have exercised the right of domain, the control of the vehicle in which they were riding.

The case of *Langley v. Sou. R. Co.,* 113 S. C., 45, 101 S. E., 286, 288, is instructive: In that case it appears that the plaintiff Mrs. Langley with her husband, two young ladies, and a nephew, Wingate, were returning from Charlotte, N. C., to their homes in Lancaster, S. C. The young man was driving the car which belonged to the Langleys, Mr. Langley sitting by his side on the front seat, Mrs. Langley and the two young ladies on the back seat. When they reached Hebron, N. C., a station on the railroad which was not far from Pineville, N. C., the first station north of the State line, it began to rain. Mrs. Langley suggested that when they reached Pineville the ladies be put on the train there. The party was nearly on the time of the train and it was necessary to speed up considerably in order to reach Pineville ahead of the train. It was fairly inferable from the testimony that the plaintiff Mrs. Langley and the other

occupants of the automobile agreed to and acquiesced in the purpose suggested by Mrs. Langley. There was evidence tending to show that the automobile was driven accordingly at a rapid rate of speed to accomplish said purpose. In attempting to make a railroad crossing between Hebron and Pineville a collision occurred from which Mrs. Langley suffered personal injuries. The defendant had a verdict, and upon appeal exception was taken to the following charge of the presiding Judge (Judge Moore): "Where several persons are engaged in a common enterprise, where they are traveling in an automobile for pleasure, or otherwise, each would be the agent of the other in carrying out such proposition. Where one of them, by common consent of all, is engaged in driving such automobile, the person so driving would be the agent of the others engaged in such common enterprise or purpose, and each of the travelers so participating would be liable for the negligence of the driver of the automobile, if there was any such negligence." The opinion of the Court was delivered by Justice Hydrick, concurred in by Justices Fraser and Gage, Chief Justice Gary and Justice Watts dissenting. The Court held: "Clearly, therefore, the evidence was susceptible of the inference that she was responsible for the rate of speed at which the automobile was being run. It matters not whether she had the 'right' to control the driver, since it is not disputed that she did in fact control him. Clearly, therefore, the evidence warranted the finding that the negligence, if any, in the rate of speed of the automobile, was imputable to her."

Mr. Justice Gage (concurring), said: "The testimony, though, satisfies me beyond doubt that the management of the car was the concurrent act of the plaintiff, her husband, and the driver.

"The car inferentially belonged to the Langleys, though the testimony is not specific on that point. The driver was nephew to the plaintiff, and he was plainly and properly heedful of the direction of the Langleys. The husband sat by

the driver. The relationship of the three was so close that their action was in common; it cannot be separated; it concurred in time and in character; it was identical."

This case I think is authority for the position that if the person injured was a passenger in the car and participated in the negligent act of the driver of the car, regardless of whether he had authority to direct the management of the car or not, the negligence of the driver is imputed to the occupant of the car injured in consequence thereof.

I think therefore that the statement in the opinion of Mr. Justice Blease that the testimony did not warrant the inference that the plaintiff was engaged in a common enterprise with the driver of the automobile at the time of the collision, and that in submitting that question to the jury the charge was more favorable to the railroad company than it was entitled to, cannot be sustained.

The precise point is ruled in the case of *Brommer v. R. Co.* (C. C. A.), 179 F., 577, 582, 29 L. R. A. (N. S.), 924:

"In *Little v. Hackett*, 116 U. S., 371, 29 L. Ed., 652, 6 S. Ct., 391, the Supreme Court held that acts of omission as well as commission might constitute contributory negligence, saying: 'That one cannot recover damages for an injury to the commission of which he has directly contributed is a rule of established law and a principle of common justice. And it matters not whether that contribution consists in his participation in the direct cause of the injury, or in his omission of duties which, if performed, would have prevented it. If his fault, whether omission or commission, has been the proximate cause of the injury, he is without remedy against one also in the wrong.'

"It follows, therefore, that Henderson was under obligations to take due care of his own safety. He was not a passenger for hire. He was engaged in the common purpose of a pleasure ride with the driver of the machine. He knew they were approaching a railroad crossing. Being free from the engrossing work of operating the machine, and occupying a

seat beside the driver, he was in an even better situation than Brommer to look out for the safety of the machine. His own safety and the instinct of self-preservation should have led him to do so. Under the circumstances his duty was well stated in *Davis v. Chicago, R. I. & P. R. Co.,* 159 F., 18, 88 C. C. A., 496, 16 L. R. A. (N. S.), 424, where it was said : 'Under the facts of this case, the relation that plaintiff sustained to his companion, Pfeutze, did not permit him to sit dumb and inert in the vehicle, taking no heed of a known danger, permitting Pfeutze to drive him into a pitfall or onto a deadly railroad track, implicitly trusting his life and limbs to the discretion of his companion without a word of warning or protest It is now the better recognized rule of law that as to such a person situated as was the plaintiff, riding in a vehicle in mere companionship with his friend, engaged upon a mutual adventure, it is as much his duty as that of the driver to take observations of dangers, and to avoid them, if practicable, by suggestion and protest. In other words, he is required to exercise ordinary care to avoid injury.'

"Measured by this standard, and the rule is founded on sound reason and is conducive to safety, we see no escape from the conclusion that Henderson was equally culpable with Brommer. He knew they were approaching a railroad crossing. As he approached he saw the view was shut off from the track. Thus ignorant of the safety or danger of the crossing, prudence, self-preservation, and the positive demand of the law called on him to stop before attempting the passage. The machine was under control, by his own account, only moving at a two-mile rate. Under the circumstances he was called on to act, or, if he chose to keep silence and join in chancing the crossing, the law will not hold him faultless of his share of bringing about the accident. The power, speed, and control of automobiles are new factors in the crossing of railroads. They tempt a reckless driver to make flying crossings. On the other hand, they afford ele-

ments of safety and convenience to a careful one. The law contributes to the rational enjoyment of the automobile, to the safety of its occupants, and to the welfare of the railroad traveling public, when, in these early cases, it holds the automobile drivers rigidly to the rule laid down in the *Maidment case* [(C. C. A.), 168 F., 21, 21 L. R. A. (N. S.), 794], that: "The duty of an automobile driver approaching tracks where there is restricted vision to stop, look, and listen, and to do so at a time and place where stopping and where looking and where listening will be effective, is a positive duty.'"

In *Davis v. R. Co.* (C. C. A.), 159 F., 10, 19, 16 L. R. A. (N. S.), 424, the Court quotes with approval the following from *Brickell v. R. Co.,* 120 N. Y., 290, 24 N. E., 449, 17 Am. St. Rep., 648:

" 'The rule that the driver's negligence may not be imputed to the plaintiff should have no application to this case. Such rule is only applicable to cases where the relation of master and servant or principal and agent does not exist, or where the passenger is seated away from the driver by an inclosure, and is without opportunity to discover danger and to inform the driver of it. It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver to learn of danger, and avoid it if practicable.'

"This is supported by persuasive authority. *Whitman v. Fisher,* 98 Me., 575, 577, 578, 57 A., 895; *Crescent Twp. v. Anderson,* 114 Pa., 643-647, 8 A., 379, 60 Am. Rep., 367; *Dean v. Pennsylvania R. Co.,* 129 Pa., 514, 525, 18 A., 718, 6 L. R. A., 143, 15 Am. St. Rep., 733; *Illinois C. R. Co. v. McLeod,* 78 Miss., 334, 341, 29 So., 76, 52 L. R. A., 954, 84 Am. St. Rep., 630; *Bresee v. Los Angeles Traction Co.,* 149 Cal., 131, 85 P., 152, 154, 5 L. R. A. (N. S.), 1059; *Hoag v. New York C. & H. R. R. Co.,* 111 N. Y., 199, 18 N. E., 648; *Missouri, K. & T. R. Co. v. Bussey,* 66 Kan., 735, 745, 71 P., 261; *Union P. R. Co. v. Adams,* 33 Kan., 427-430, 6 P., 529; *Bressler v. Chicago, R. I. & P. R. Co.,*

74 Kan., 256, 86 P., 472. If the law were otherwise, A. and B., having occasion to drive through the country on a matter of mutual business or pleasure, riding in a conveyance owned by A., who should drive, their course of travel leading across a railroad track, the situation of the intersection being very dangerous on account of it being 'a blind crossing,' with which A., the driver, was not familiar, but B having full knowledge of such danger, he could sit in his seat and suffer A, without a word of warning or suggestion, to drive into the death trap, and if injured himself, when charged with contributory negligence, say, as A was not his servant or agent he was not responsible for A driving heedlessly onto the track. The law of common sense applied to such a situation is that the movement and control of the vehicle is as much under the direction and control of one as of the other."

In *Wentworth v. Waterbury*, 90 Vt., 60, 96 A., 334, 336, the Court said: "But, if this view of the transcript is not warranted, then the plaintiff is prevented from recovering because it is not possible to say that the case tends to show that the plaintiff was himself free from contributory negligence. His own testimony is that he saw the horse and wagon standing diagonally across the road when the automobile was from 8 to 12 rods away, and there is no suggestion in the case that he mentioned that fact to the driver or did anything but to sit supine and mute beside him on the front seat while the car went forward with unslackened speed. Even though we regard the two as not engaged in a common enterprise, the plaintiff was not excused from taking reasonable measures for his own protection. *Landrum v. St. Louis, etc., Ry. Co.* (Mo. App.), 178 S. W., 273, 276; *Clarke v. Connecticut Co.,* 83 Conn., 219, 76 A., 523; *Shultz v. Old Colony St. Ry.,* 193 Mass., 309, 323, 79 N. E., 873, 877, 878, 8 L. R. A. (N. S.), 597, 118 Am. St. Rep., 502, 9 Ann. Cas., 402; *Smith v. Main Central R. Co.,* 87 Me., 339, 32 A., 967; *Whitman v. Fisher,* 98 Me., 575, 57 A.,

895; *Brickell v. New York, etc., R. Co.*, 120 N. Y., 290, 24 N. E., 449, 17 Am. St. Rep., 648; *Brommer v. Pennsylvania R. Co.*, 179 F., 577, 103 C. C. A., 135, 29 L. R. A. (N. S.), 924, 19 Ann. Cas., 1225, note, subheading 'Care Required of Occupant'; *Cotton v. Willmar*, 99 Minn., 366, 109 N. W., 835, 8 L. R. A. (N. S.), 643, 116 Am. St. Rep., 422, 9 Ann. Cas., 935, 938; *Colorado, etc., Co. v. Thomas*, 33 Colo., 517, 81 P., 801, 70 L. R. A., 681, 3 Ann. Cas., 700, and note 704."

His Honor charged the jury as follows: "I charge you that the negligence of the driver of an automobile will not be imputed to a person merely riding in a vehicle by invitation of the owner, and riding gratuitously, unless such passenger assume control or direction of the conduct of the driver."

This charge is manifestly subject to the same criticism; it fixes the criterion of actual control or direction and disregards entirely the failure of the occupant to give notice.

His Honor charged the jury as follows: "I will say this about a common enterprise. If these parties were engaged in a common enterprise, the act of one is the act of the other; the negligence of one is the negligence of the other. If they were not, it would take the gross and willful negligence on the part of Key to defeat his recovery in this case. Now, what is the duty of a passenger, one who is not engaged in a common enterprise. When riding with another he has no right to control the direction or the course of the car, but he is not permitted just to sit by and allow the driver to carry him into places of danger. If he sees danger, that peril is imminent, the law requires that he keep his eyes and his ears open and that he advise the driver of the apparent danger. That is the duty imposed upon the passenger and if the passenger fails to do that, he has failed to discharge his duty, under the circumstances, and if he fails to do that, he cannot recover."

This charge is clearly erroneous and confusing. It makes no discrimination between the two causes of action. As applicable to the statutory cause of action, it eliminates the issue of the negligence of the driver; as to that of the plaintiff, it is correct. As applicable to the common-law cause of action, it is erroneous as requiring the contributory negligence of the plaintiff to be of the same degree as that under the statute.

In the case of *Lewis v. R. Co.*, 263 Mass., 87, 160 N. E., 663, the Court construed a statute of Massachusetts which was practically identical with our crossing statute. It was there held that the driver of a truck in which others were riding was in charge of the person of the occupant who was injured by reason of the gross negligence of the driver, and that under the express terms of the statute the negligence of the driver was a complete bar to recovery by the occupant.

That the plaintiff was equally guilty with the driver of gross negligence I do not think that there can be a doubt, and it is clear under the statute that his gross negligence contributed to the collision. It was necessary that the plaintiff, admitting that if the car had been stopped before going upon the crossing the approaching train could have been seen at least 600 yards up the track, give some excuse for not having insisted that that be done. His explanation was that the cloud of dust overhanging the crossing obscured his vision; he therefore gives the most cogent reason why the car should have been stopped and convicts himself of gross negligence. He admits that he was familiar with the location of the crossing, that there was nothing between him and the train to obstruct his vision except the cloud of dust; it was taking the wildest of chances to proceed under these circumstances, knowing too that they were practically upon the arriving schedule time of the train.

I do not think that any other reasonable inference can be drawn from the evidence than that the plaintiff and the driver were engaged in a common enterprise. Their purpose

was an afternoon drive for pleasure in which both were directly interested. The fact that their mission was pleasure could not affect the character of the mission as a common enterprise. It appears that they drove out some miles and came across a wreck in which one was injured; they together turned around and went for a doctor; they found him and sent him out to the relief of the injured person; together they went to a drug store, where both got out and went in; they then went, evidently at the request of the plaintiff, to a café into which the plaintiff went to have a check cashed; they then went to the Southern depot at plaintiff's request to learn the schedule of a train to Charlotte, the driver waiting until the plaintiff secured the information which he desired; they then resumed their pleasure trip, when the collision occurred.

His Honor charged the jury: "And it (the State of South Carolina), also says, in addition to statutory requirements, that a train approaching a crossing, if the engineer in charge of that engine is put upon notice, in the exercise of his senses of seeing, and if necessary, hearing, that someone may be going upon the track, even though they are doing wrong, he must do all that is reasonable within his power to prevent an injury to that person; he must do all that he reasonably can to put them on notice of the approach of the train and the presence of imminent danger, regardless of statutory requirements."

In view of the specifications of negligence at common law, set forth in the complaint, in the failure of the defendant to properly regulate the operation of its train and to give notice to the plaintiff after it was seen or could by the exercise of ordinary care have been seen that the occupants of the car were in a position of peril and danger, the natural inference from the Judge's charge was that, if there was such failure on the part of the engineer, the plaintiff would be entitled to recover damages, regardless of the fact that he may have

been guilty of contributory negligence in not reasonably observing the approach of the train.

It cannot be denied I think that his charge was thus applying what is known in some jurisdictions as the "last clear chance." If the plaintiff was doing wrong in going upon the track without adequate precaution, he was certainly guilty of contributory negligence and would not be entitled to recover if his contributory negligence was a proximate cause concurring with the negligence of the defendant in producing the injury.

Under the undisputed testimony in the case, neither the plaintiff nor the driver, before going upon the track and when within 15 feet of the rails, made any effort to stop the car until the plaintiff was within 50 or 60 feet, when warning signals of defendant's approach were given. There is no evidence tending to show that the engineer saw that the plaintiff was in a position of peril until he gave the signals; the collision occurred in about a second after they heard the signals and discovered the train. The specifications of negligence in the complaint clearly attempt to make the "last clear chance" doctrine the basis of recovery. This principle, while prevailing in some jurisdictions, has been consistently repudiated by this Court. *Spillers v. Griffin,* 109 S. C., 78, 95 S. E., 133, L. R. A., 1918-D, 1193; *Craig v. R. Co.,* 93 S. C., 49, 76 S. E., 21, 24.

In the *Craig case* the charge to the jury attempted to impose liability under this doctrine. Justice Woods in delivering the opinion of the Court said: "It is true that the Circuit Judge in charging this request and in other portions of the charge stated the general law of contributory negligence; but that by no means cured the error of selecting a particular alleged omission of the defendant—failing to keep a lookout —and saying to the jury that if the defendant was negligent in that particular, and that was the proximate or main cause of the injury, the plaintiff could recover, although they should find to be negligent a particular act of the plaintiff—

being drunk and helpless on the track. Even if the defendant was negligent in not keeping a proper lookout, the plaintiff could not recover if his being on the railroad track in a drunk and helpless condition was a proximate cause of his injury, and was due to his own negligence. The error of charging to the contrary was manifestly highly prejudicial."

See, also, authorities cited in the dissenting opinions in the cases of *Sharpe v. R. Co.,* 125 S. C., 478, 119 S. E., 245, and *Edwards v. R. Co.,* 148 S. C., 266, 146 S. E., 97.

In the case of *Spillers v. Griffin,* 109 S. C., 78, 95 S. E., 133, 134, L. R. A., 1918-D, 1193, the Court said: "His Honor charged that, even though the plaintiff was negligent, yet if the defendant's servant saw the plaintiff in time to avoid the collision, the plaintiff might still recover. That is the doctrine of 'the last clear chance,' and is not the law in this State."

I do not think that the charge is sustained by any declaration of the Court in the case of *Chisolm v. R. Co.,* 121 S. C., 394, 114 S. E., 500, 503, as asserted in the opinion of Mr. Justice Blease.

In the first place, it is distinctly held in that case that the collision did not occur at such a crossing as required the sounding of the statutory signals; the case at bar involves a cause of action under the statute and one at common law; so that nothing said in the *Chisolm case* could have any application to the cause of action in the case at bar under the statute. If it has any application at all, it must be limited to the cause of action under the common law.

In the second place, the verdict in the *Chisolm case* was a general verdict, and the Court held that as there was an allegation that the delict, the failure to give reasonable and adequate warning, was wanton and willful, it would be assumed that, if necessary to sustain the verdict, the jury found the defendant guilty of willfulness in so failing to discharge its duty. In the case at bar the verdict was specifically limited to "actual damages"; it is fair, by parity of

reasoning, to assume that the jury did not find that the delict, at common law, was willful on the part of the defendant. There was nothing in the allegations of the complaint or in the evidence which tended to show that the failure to give reasonable warning was willful; as a matter of fact, the allegation is that after the engineer saw, or by the exercise of ordinary care should have seen, the predicament of the plaintiff he should have given the warning—an allegation not of willfulness but of ordinary negligence.

In the third place, the issue in the *Chisolm case* was whether the Judge should have directed a verdict in favor of the defendant upon one or the other of two grounds: (1) That the sole proximate cause of the injury was the negligence of the intestate; (2) that the willful or wanton misconduct of the intestate, combining and concurring with the willful default of the defendant, contributed to the injury as a proximate cause. The Court held, considering the evidence bearing upon the first ground: "If because of the failure to give such notice the intestate went upon the track and was injured, however derelict he might have been in failing to exercise due care himself, it cannot be held that his own default was the sole proximate cause of the injury." And in considering the second ground, that it was an issue for the jury whether the intestate was guilty of such gross or willful negligence as would constitute contributory negligence against the assumed willful act of the defendant.

In the case at bar, under this exception no such issues were involved; the issue was whether the Judge erred in singling out an alleged delict of the defendant and charging practically, without reference to the contributory negligence of the plaintiff, that if its delict in that respect was established the plaintiff was entitled to damages.

In reference to the constitutional objections raised by the appellant, it is held in the leading opinion that they cannot be considered for the reason that they were not raised and passed upon by the Circuit Court, in the first instance; cases

decided by this Court are cited in support of this declaration; with them I am entirely in accord; but I think that there is a marked distinction between an attack upon a statute upon the ground of its unconstitutionality, and an attack upon a ruling of the trial Judge upon the ground that it is erroneous for the reason that its effect is to render the statute unconstitutional. I think that this distinction will appear upon a consideration of the exceptions which attempt to raise the constitutional objections.

In the fourth exception the error assigned is that the statute is violative of the Federal Constitution, in that it imposes upon railway corporations, alone, the burden of showing gross or willful negligence on the part of the person injured, in order to establish the defense of contributory negligence; whereas, every other tort-feasor may successfully defend by showing ordinary negligence on the part of the person injured. This assignment I think is a direct attack upon the constitutionality of the crossing statute and cannot be raised for the first time in this Court.

In the fifth exception the error assigned is of the same nature and for the same reason cannot be considered.

In the seventh exception the error assigned is not an attack upon the constitutionality of the statute, but upon the charge of the presiding Judge, in declaring, in line with certain decisions of this Court, that the failure to comply with the statute is negligence *per se,* and raises the presumption that it caused the collision. The attack is not upon the statute, but upon a judicial construction of it; the attack may be sustained by showing that it is erroneous for any reason, and particularly for the reason that such a construction would render the statute in conflict with the Federal Constitution. In fact, I do not see how the defendant, if it desired to do so, could raise this objection until after the charge has been made, by an exception urged for the first time in this Court, and upon necessarily the first occasion possible.

In the tenth exception the error assigned is, similarly, not an attack upon the constitutionality of the statute, but upon the charge of the presiding Judge, in declaring in line with the case of *McBride v. R. Co.,* 140 S. C., 260, 138 S. E., 803, 807, that the failure of a railroad company to comply with the signaling statute is not only negligence *per se,* but will be presumed to have been the proximate cause of the collision. For the same reason I think it is entirely permissible to sustain the assignment of error by urging in this Court the unconstitutional effect of such a construction.

It may be that the defendant in this case would fail in its effort to have the question of the constitutionality of the statute reviewed by the Supreme Court of the United States, for the reason that it had not been raised· upon the trial in the State Court, and had not been passed upon by this Court (though that is not at all certain under the ruling in *Rothschild v. Knight,* 184 U. S., 334, 22 S. Ct., 391, 393, 46 L. Ed., 573: "A motion is made to dismiss the writ of error upon the ground that no Federal question was raised in the Superior Court. Federal questions were raised, however, on writ of error to the Supreme Court, and that, we think, was a sufficient claim"); the fact however, that it may not be reviewable by the Supreme Court of the United States should not pretermit this Court from passing upon the exception to the Judge's charge, upon any ground that might be suggested, including the effect of the construction which would render the statute unconstitutional, regardless of whether the statute as it stands is or is not constitutional.

I insist therefore upon a decision, not that the statute is unconstitutional, but that the charge was erroneous in placing upon it a construction which would make it so.

It may be assumed, in the absence of an attack in the trial Court upon the constitutionality of the statute, that that issue is not open upon this appeal, and that so far as this appeal is concerned, the statute is constitutional; but that assumption does not preclude this Court from considering

the assigned error of the trial Judge in interpolating into the statute, provisions which it does not contain, giving to it an interpretation which offends the constitutional guaranties of due process and equal protection.

The oft-repeated declaration that the failure of a railroad company to comply with the requirements of the signaling statute is negligence *per se,* is an unfortunate and misleading expression of the law; it is a confusion of the colloquial interpretation of negligence with the legal, and is the source of the error which appears in the *McBride case,* that the failure referred to creates a presumption that it was the proximate cause of a collision. The colloquial interpretation of the term is synonymous with breach of duty; the legal is an actionable wrong. It would be more accurate to say that it is a breach of duty; it cannot be negligence in the legal sense unless the breach of duty is shown to have caused injury.

Judge Cooley, in his work on Torts (3d Ed., 1324), defines "negligence" "as the failure to observe for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury."

In 45 C. J., 632, it is said: "In every case involving negligence there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of defendant to protect plaintiff from the injury; (2) failure of defendant to perform their duty; and (3) injury to plaintiff from such failure of the defendant. When these elements are brought together they unitedly constitute actionable negligence, and the absence of any one of these elements renders the complaint bad or the evidence insufficient."

To say that the failure constitutes negligence *per se* is therefore erroneous, in that it presumes, even *prima facie,* the three elements of actionable negligence above referred to, which cannot be the law. If the statute had contained such a declaration, it plainly would have been an infraction of the Constitution; why this Court cannot say that its interpola-

tion by the trial Judge does not have the same effect, I do not apprehend.

The charge of the trial Judge has injected into the statute a still more objectionable feature, which for the reasons above stated is similarly open to review by this Court, although not raised in the Court below: That the failure to comply with the signaling statute will be presumed to have been the proximate cause of the collision.

I cannot possibly add anything to my dissenting opinion in the *McBride case,* where I vainly endeavored to demonstrate the fallacy of holding the existence of such a presumption. I may simply repeat a quotation from one of our own cases, which crystalizes the law upon the subject: "When evidence of negligence is only *prima facie,* it is subject to rebuttal but when there is negligence *per se,* it is conclusive of that question. The fact that there is negligence *per se* does not, however, tend to show that such negligence is actionable. The question whether negligence is actionable depends upon the further question whether such negligence was the direct and proximate cause of the injury." *Whaley v. Ostendorff,* 90 S. C., 281, 73 S. E., 186, 187.

The question whether the injection into the statute of such a presumption violated a constitutional guaranty did not arise in the *McBride case,* and of course was not considered.

Under the charge of the trial Judge the issue was not, as in all other tort actions, whether the failure to give signals was the proximate cause of the accident, since that is fixed, but whether signals were given, and if only one witness gives testimony merely that he did not hear any signals, the case must be submitted to the jury and this will be sufficient to sustain a verdict against the railroad company for both negligence and willfulness.

In *Lawson v. R. Co.,* 91 S. C., 201, 74 S. E., 473, 477, the Court said: "Where an act is negligence *per se* the jury must find negligence. Where it is a mere evidence of negli-

gence, the jury may not find that the defendant was negligent. The failure to sound the bell or whistle has been declared by this Court to be negligence, and if the jury had believed from the evidence that neither the bell nor the whistle was sounded, then they were bound to find for the plaintiff."

The last case was expressly reaffirmed in the very recent one of *Miller v. R. Co.,* 140 S. C., 123, 138 S. E., 675.

The ruling of the trial Judge (not the statute), precludes in this State the application of the standard of conduct governing railroad and traveler in crossing accidents prescribed by the United States Supreme Court in *B. & O. R. Co. v. Goodman,* 275 U. S., 66, 48 S. Ct., 24, 72 L. Ed., 167, 56 A. L. R., 645, quoting syllabus: "One who drives upon a railroad track relying upon not have heard a train or any signal and taking no further precaution, does so at his own risk. If he can not otherwise be sure whether a train is dangerously near, the driver must stop and get out of his vehicle before attempting to cross." The Court said: "It is true * * * that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the Courts."

This standard, which is based on the fundamental conception of the mutual rights and the mutual obligations of the respective parties as judged by the circumstances of the situation, has been rejected by this Court on the ground that it conflicts with Sections 4903 and 4925, and that they furnish the sole standard of conduct in this State. *Key v. R. Co.,* 150 S. C., 29, 147 S. E., 625; *Holladay v. R. Co.,* 150 S. C., 243, 147 S. E., 927.

From the decisions cited above, these conclusions follow: An automobile driver, without stopping, looking, or listening, drives his car on to a grade crossing and collides with a train. He, or the person riding with him, is injured. The case comes on for trial. Plaintiff proves the fact of the colli-

sion and the injury. The evidence is overwhelming that the signals were given as required by Section 4903. Plaintiff, although cooped up in a closed car, swears that he did not hear the signals. Then the challenged statute comes into play. Immediately, without proving more, due to the interpretation put on it by the Court, if the jury believes, based on plaintiff's wholly negative statement, that the signals were not properly given, there is created as a matter of law a presumption that the railroad's negligence was the proximate cause of plaintiff's injury, and that such injury was willfully and wantonly inflicted. The plaintiff is not a railroad employee—that is immaterial. There is absolutely no proof of causal connection between the failure to give signals and the collision—that is immaterial. The evidence may show that the failure to give the signals could not have caused the accident—that is immaterial. If the jury believes signals were not properly given that is the end of it. The presumption does the rest.

But this is not all: The plaintiff says he heard no signal; the jury on this says that no signal was given, and upon this the charge of the trial Judge is that the failure to give the signal is presumed to have been the proximate cause of the collision. In fairness to the trial Judge it should be stated that he did not charge that the presumption was conclusive; he said, "* * * Such presumption would be rebuttable by evidence and the jury should consider any and all evidence that may be in the case in determining the question of proximate cause"; in line with the declaration of the Court in the *McBride case:* "It must be borne in mind that this presumption does not mean that the causal relationship [connection?] between the failure to give the signals and the injury is shown conclusively. The presumption merely establishes a *prima facie* case, which may be overcome by testimony, whether given for the plaintiff or for the defendant."

Both statements I respectfully submit are erroneous, as may be clearly demonstrated by the rulings of the Supreme

Court of the United States in the case of *Western & Atlantic R. Co. v. Henderson,* 279 U. S., 639, 49 S. Ct., 445, 447, 73 L. Ed., 884, decided May 27, 1929. Parenthetically I may say that in view of the fact that I am not discussing the constitutionality of the statute, but am discussing the assigned error in the Judge's charge, I am not to be understood as contending that the decision in the *Henderson case* is binding upon this Court upon the present appeal; but I do insist that it is most persuasive in support of the proposition that the construction of the statute by the trial Judge was erroneous, for the reason that its effect would be to render the statute, taken in connection with his interpretation, unconstitutional.

In the *Henderson case* the plaintiff's intestate was killed in a collision at a railroad grade crossing, between a truck he was driving and a train of the railroad company. Plaintiff recovered under a statute of Georgia which declared that, on proof of the happening of such an accident, a presumption arose that it was due to the negligence of the railroad company as a proximate cause.

Assuming that the Court, following its own decision in the case of *Mobile, etc., R. Co. v. Turnipseed,* 219 U. S., 35, 31 S. Ct., 136, 137, 55 L. Ed., 78, 32 L. R. A. (N. S.), 226, Ann. Cas., 1912-A, 463, would have sustained the Georgia statute in the *Henderson case,* if the statute, either by its terms or by a construction of it by the Georgia Court, had provided for simply a *prima facie* presumption of negligence, it seems clear that the trial Judge in the case at bar, and the Court in the *McBride case,* misapprehended the office of a *prima facie* presumption, in according to it the effect of evidence to be weighed against opposing evidence. (See quotations above.)

In the *Turnipseed case* the plaintiff relied upon a Mississippi statute which provided: "Proof of injury inflicted by the running of the locomotives or cars of such [railroad] company shall be *prima facie* evidence of the want of rea-

sonable skill and care on the part of the servants of the company in reference to such injury." The Supreme Court refused to sustain an attack upon the statute as arbitrary and in violation of the due process clause of the Constitution, saying: "The only legal effect of this inference is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done the inference is at an end, and the question of negligence is one for the jury, upon all of the evidence. * * * The statute does not * * * fail in due process of law, because it creates a presumption of liability, since its operation is only to supply an inference of liability in the absence of other evidence contradicting such inference."

Differentiating the *Turnipseed case* the Court in the *Henderson case* said: "That case is essentially different from this one. Each of the State enactments raises a presumption from the fact of injury caused by the running of locomotives or cars. The Mississippi statute created merely a temporary inference of fact that vanished upon the introduction of opposing evidence. *Gulf, M. & N. R. Co. v. Brown,* 138 Miss., 39, 66, 102 So., 855 *et seq.; Columbus & G. Ry. Co. v. Fondren,* 145 Miss., 679, 110 So., 365. That of Georgia as construed in this case creates an inference that is given effect of evidence to be weighed against opposing testimony, and is to prevail unless such testimony is found by the jury to preponderate." The Court further said:

"Upon the mere fact of collision and resulting death, the statute is held to raise a presumption that defendant and its employees were negligent in each of the particulars alleged, and that every act or omission in plaintiff's specifications of negligence was the proximate cause of the death, and it makes defendant liable unless it showed due care in respect of every matter alleged against it. And, by authorizing the jury, in the absence of evidence, to find negligence in the operation of the engine and train, the Court necessarily permitted the presumption to be considered and weighed as evi-

dence against the testimony of defendant's witnesses tending affirmatively to prove such operation was not negligent in any respect.

"Appellee insists that Section 2780 is valid, and argues that the presumption, being one established by statute, has the effect of evidence, and that it is for the jury to decide whether the company's evidence is sufficient to overcome the presumption; that 'it should not as a matter of law be dissipated the instant any testimony is taken against it.' and that the issue is to be determined on a consideration of all the evidence including the presumption.·

"Legislation declaring that proof of one fact or group of facts shall constitute *prima facie* evidence of an ultimate fact in issue is valid if there is a rational connection between what is proved and what is to be inferred. A *prima facie* presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates. A statute creating a presumption that is arbitrary, or that operates to deny a fair opportunity to repel it, violates the due process clause of the Fourteenth Amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property."

And then it reached this conclusion: "The presumption raised by Section 2780 is unreasonable and arbitrary, and violates the due process clause of the Fourteenth Amendment. *Manley v. Georgia* [279 U. S., 1, 49 S. Ct., 215, 73 L. Ed., 575], *supra; McFarland v. American Sugar Co.*, 241 U. S., 79, 60 L. Ed., 899, 36 S. Ct., 498; *Bailey v. Alabama,* 219 U. S., 219, 55 L. Ed., 191, 31 S. Ct., 145."

The point under discussion is clearly elaborated in the case of *Kirch v. A. C. L. R. Co.* (C. C. A.), 38 F. (2d), 963, 964. That case involved a construction of a Florida statute which was a copy of the Georgia statute construed in the *Henderson case.* The statute was upheld against an attack upon its constitutionality, the railroad company contending

that the decision should be ruled by the *Henderson case.* The Court pointed out the distinction between the two cases thus: "There is no doubt that the Florida statute was copied from the Georgia statute; but the Florida Supreme Court has given to it a construction that is different from the construction which the Supreme Court held in the *Henderson case* has been given by the Supreme Court of Georgia. In the just-cited case it was said that the statute as construed by the Georgia decisions 'creates an inference that is given effect of evidence to be weighed against opposing testimony, and is to prevail unless such testimony is found by the jury to preponderate.' The uniform construction of the statute by the Supreme Court of Florida is that it merely creates a presumption that disappears and comes to an end upon the submission of proof by a railroad company that its agents have exercised ordinary and reasonable care."

In the *McBride case,* this Court declared that collision and injury at a crossing is "the natural and probable consequence of the failure to give the signals." The Supreme Court of the United States declared otherwise in the *Henderson case,* using this language: "The mere fact of collision between a railway train and a vehicle at a highway grade crossing furnishes no basis for any inference as to whether the accident was caused by negligence of the railway company, or of the traveler on the highway, or of both, or without fault of any one. Reasoning does not lead from the occurrence back to its cause."

For these reasons I feel satisfied that the judgment of the Circuit Court was wrong and should be reversed.